LADIES OF THE MACCABEES *v.* COMMISSIONER OF INSURANCE.

1. BENEFICIAL ASSOCIATIONS—MERGER — APPROVAL BY INSURANCE COMMISSIONER MANDATORY IF INTERESTS OF MEMBERS PROTECTED —STATUTES.

> Where the commissioner of insurance was presented with the contract consolidating two fraternal beneficiary societies with certificates of the officers of the two societies showing its approval by each of them, under the statute (Act No. 51, Pub. Acts 1923), if he was satisfied "that the interests of the certificate holders * * * are properly protected;" that the "contract is just and equitable" to the members, and that "no reasonable objection exists thereto," it was his duty to approve it, the statute being mandatory, and he had no authority to determine the legality of the action taken by said societies.[1] BIRD, C. J., and WIEST, J., dissenting.

2. SAME—TWO-THIRDS VOTE OF QUORUM SUFFICIENT TO APPROVE MERGER.

> Approval of the merger did not require a vote of two-thirds of the total membership of the governing body of each society, but approval could be had by a vote of two-thirds of a quorum of each.[2]

Mandamus by the Ladies of The Maccabees and The Maccabees to compel Leonard T. Hand, commissioner of insurance, to approve a merger of plaintiff societies. Submitted April 6, 1926.    (Calendar No. 32,493.) Writ granted July 1, 1926.

*John B. McIlwain* and *John E. Owen,* for plaintiffs.

*Andrew B. Dougherty,* Attorney General, and *Thomas J. Green,* Assistant Attorney General, for defendant.

---

[1]Beneficial Associations, 7 C. J. § 10; [2]Id., 7 C. J. § 10.

WIEST, J. (*dissenting.*)    The executive officers of the Ladies of The Maccabees and The Maccabees, fraternal beneficiary societies, incorporated under the laws of this State, believing it would be for the mutual benefit of the societies and membership if the two societies were merged or consolidated, prepared a written contract providing the terms and conditions upon which such merger and consolidation would be equitable and just for submission to the supreme governing bodies of each of the societies, in accordance with the provisions of Act No. 51, Pub. Acts 1923. That act provides:

"When any such fraternal benefit society shall propose to consolidate or merge its business or to enter into any contract of reinsurance, or to assume or reinsure the whole or any portion of the risks of any other fraternal benefit society the proposed contract in writing setting forth the terms and conditions of such proposed consolidation, merger or reinsurance shall be submitted to the legislative or governing bodies of each of said parties to said contract after due notice, and, if approved by a vote of two-thirds of the members of the supreme legislative or governing body of each of said societies, such contract, as so approved, shall be submitted to the commissioner of insurance of this State for his approval."    *    *    *

The proposed contract was adopted by unanimous vote of the supreme legislative body of The Maccabees. The supreme governing body of the Ladies of The Maccabees convened in December, 1925, to consider the proposed contract.    That body had a total membership of 306, and there were present 298 members. Under the laws of the order one-fourth of the total membership constitute a quorum for the transaction of business.    Approval of the proposed contract required an affirmative vote of two-thirds of the members of the governing body.    When the question was put 289 members were present, 192 members voted for

ratification, and 96 members voted against ratification, and one member voted blank.

The question we are to decide is whether there was a vote of two-thirds of the members of the governing body in favor of ratification. The commissioner of insurance held that it required a vote of two-thirds of the full membership constituting the supreme body, and, as the vote fell short of two-thirds of the total membership of 306, there was no ratification, and for this reason he refused official approval. The point is also made, in behalf of the commissioner, that the record of the vote shows on its face that the proposal was not approved by two-thirds of the members present. We are asked to issue our writ of mandamus directing the commissioner in the premises.

We are satisfied that approval of the merger could be had by a vote of two-thirds of a quorum. The question is ruled by *Missouri Pacific R. Co.* v. *Kansas,* 248 U. S. 276 (39 Sup. Ct. 93, 2 A. L. R. 1589). It is not deemed necessary to cite other authorities.

The commissioner was in error in holding valid action required a vote of two-thirds of the total membership of the supreme body. This brings us to the question of whether the vote recorded fell short of two-thirds of the members of the supreme governing body. Decision hinges upon the blank ballot. Ninety-six members voted no, twice 96, or 192, voted yes, and one voted blank. We must count the member voting blank as present and a member of the supreme body; 289 members being present, and one less than two-thirds voting in favor of ratification, it cannot be said that two-thirds of the members constituting the supreme body voted in favor of the merger.

In *Brown* v. *Nash,* 1 Wyo. 85, the question we are considering was determined. That case involved the vote of the legislature in passing a law over the veto of the governor. The speaker of the house was

present, but was excused at his own request from voting. The court stated:

"Now if the speaker of the house was present, whether he voted or not, there were eleven members present, and it would require more than seven votes to make two-thirds. The law is not that one-third voted against the bill, but it is that two-thirds of the members present did vote for it. Now, if the speaker was present, no matter whether he voted for it or not, then there were eleven members present, and it would require at least eight votes to constitute two-thirds; if he was absent, then there were but ten votes, and seven would be two-thirds. * * * So that it appears to us very clearly that this law was not passed in accordance with the provisions of the Constitution of the United States, or the organic act of this Territory, from the fact not that it did not receive two-thirds of the votes recorded, but that it did not receive the vote of two-thirds of the members present, and therefore is not one of the laws of the Territory."

The case of *Wightman* v. *Village of Tecumseh*, 157 Mich. 326, cited by plaintiff as authority to the point that the blank ballot cast should not be considered in estimating the requisite two-thirds as it was no vote, is not analagous. That was an election case and the proposition was carried by a required two-thirds vote of the legal votes cast, and, speaking of void votes rejected, it was said: "A void vote is of no more effect than no vote."

In the case at bar the statute, as we construe it, required a vote of two-thirds of the members of the supreme body present.

In the petition for the writ the proceedings claimed to have resulted in a vote authorizing the merger are set up as follows:

"The result of the fourth ballot was then tabulated on a separate sheet of paper and again read to the supreme body, and in open review signed by the great commander and great record keeper, without any objection from any member of the body, and is as follows:

" 'The fourth and last ballot taken on the above resolution was as follows:

" 'Total number of ballots cast....................289
" 'Total number of valid ballots....................288
" 'Cast blank ....................................... 1
" 'Number of ballots necessary to carry the resolution.192
" 'Ballots cast in favor of said resolution..........192
" 'Ballots cast against said resolution.............. 96
" 'The resolution was declared carried by a two-thirds vote.
" 'Read, approved and signed in open review, this 11th day of December, 1925.

" 'EMMA E. BOWER, Great Record Keeper.
" 'FRANCES E. BURNS, Great Commander.'

all of which appears in the certified copy of the proceedings of said supreme body filed with the commissioner of insurance."

The determination we make supports the action of the commissioner, and the writ should be denied, with costs to defendant.

BIRD, C. J., concurred in the result reached by WIEST, J.

SHARPE, J. The merger contract, when submitted to the defendant for his approval, had attached thereto the affidavit of Frances E. Burns, great commander, and of Emma E. Bower, great record keeper, of the plaintiff society, in which the resolution approving of the merger and adopting the contract was set out at length. Then followed:

"That upon a vote being taken thereon, the foregoing resolution was adopted by the votes of two-thirds of the members of the special review, as announced by the tellers, declared so carried by the presiding officer, and thereafter reduced to writing, which was read and approved by the entire body, and in open review signed by the great commander and the great record keeper, without any objection thereon."

The affidavits of A. W. Fry, supreme commander, and S. W. Hall, supreme record keeper, of the Macca-

bees, wherein it was stated that the merger contract had been approved by the unanimous vote of the supreme governing body of that society, were also attached.

Counsel for the plaintiffs insist that the defendant had no right to go behind these affidavits and attempt to ascertain for himself whether the contract had been approved in the manner required by the statute.

Following the provision quoted by Mr. Justice WIEST, the statute reads:

"The commissioner of insurance shall thereupon consider such contract of consolidation, merger or reinsurance, and, if satisfied that the interests of the certificate holders of such fraternal benefit societies are properly protected, and that such contract is just and equitable to the members of each of such societies, and that no reasonable objection exists thereto, shall approve said contract as submitted. In case the parties corporate to such contract shall have been incorporated in separate States, or Territories, such contract shall be submitted as herein provided to the commissioner of insurance of each of such incorporating States, or Territories, to be considered and approved separately by each of such commissioners of insurance. When said contract of consolidation, merger or reinsurance shall have been approved as hereinabove provided, such commissioner or commissioners of insurance shall issue a certificate to that effect, and thereupon the said contract of consolidation, merger or reinsurance shall be in full force and effect. In case such contract is not approved the fact of its submission and its contents shall not be disclosed by the commissioner of insurance."

It appears from the record that when the contract, with the affidavits annexed, was presented to the defendant for his approval, he fixed a date for hearing it and at his request a certified copy of the proceedings of the plaintiff society at which the contract was approved was furnished to him.

In my opinion, he had no authority under the stat-

ute to make such a request, nor, upon the copy of the proceedings being furnished him, to determine the legality of the action taken. The statute does not in terms confer any power upon him to review the proceedings. When the contract with the certificates of the officers of the two societies showing its approval by each of them was presented to the commissioner, his duty is clearly pointed out in the statute. If he be satisfied "that the interests of the certificate holders * * * are properly protected;" that the "contract is just and equitable" to the members, and that "no reasonable objection exists thereto," he "shall approve" it. This provision is mandatory.

"When the word 'shall' is used in a command to a public official, it excludes the idea of discretion." *People* v. *De La Mater,* 213 Mich. 167, 171.

See, also, *Thiedemann* v. *Dental Examiners,* 214 Mich. 369.

The last sentence of the section above quoted would seem to negative his right to hold a public hearing.

Defendant's refusal to approve the contract was based solely upon the fact that it had not been approved by a two-thirds vote of the plaintiff's governing body, as required by the statute. The record of plaintiff's meeting showed that there were 298 persons present and entitled to a seat and vote in that body. Defendant was of the opinion that at least two-thirds of that number must have voted in favor of approval to comply with the statute. The one blank vote on which the opinion of Mr. Justice WIEST hinges was not considered by him.

I concur in holding that "approval of the merger could be had by a vote of two-thirds of a quorum." The record does not disclose the number present when the vote was taken. The blank ballot might in some way have been folded in with one cast by a member in voting. It is surely quite as reasonable to so infer

as to assume that a member present and entitled to vote did not desire to do so and used the blank ballot to conceal her inclination in that respect.    But if it be conceded that the blank ballot was cast by a member present and entitled to vote, its presence in the box did not, in my opinion, affect the result of the vote as announced.    If the statute requires a two-thirds vote of those present, then the entire 298 must be counted, for the record shows that there were that number "present and entitled to a seat and vote in the supreme body."   The members present constituted more than a quorum of the legislative or governing body of the society.    They met to take action upon the merger contract.    Approval required a vote of two-thirds of a quorum of the legislative or governing body there assembled.    One or more members by declining to vote could not prevent affirmative action by those voting.    More than a quorum voted, and two-thirds of those who voted yielded their assent to the merger, and, in my opinion, satisfied the statute. Those present, and not voting, could not by their silence and inaction prevent those voting from expressing the will of the entire body when lawfully assembled.

The conclusion thus reached is in harmony with the holding in *Missouri Pacific R. Co.* v. *Kansas,* 248 U. S. 276 (39 Sup. Ct. 93, 2 A. L. R. 1589).    The question there presented involved a construction of the provision of the Constitution requiring a vote of two-thirds of each house to pass a bill over a veto of the President.    It was held that a vote of "two-thirds of a quorum of each house, *i. e.,* of a majority of its members (Art. 1, § 5), not two-thirds of all the members of the body," was all that was needed.    The court quoted approvingly the ruling of Speaker Reed of the national house of representatives, in which he said:

"Among the business that comes before the house is the consideration of a bill which has been vetoed by the President; another is a proposed amendment to the Constitution; and the practice is uniform in both cases that if a quorum of the house is present the house is constituted and two-thirds of those voting are sufficient in order to accomplish the object."

There is no intimation' that two-thirds of those present must vote in the affirmative to carry the question. In *United States* v. *Ballin,* 144 U. S. 1, 5 (12 Sup. Ct. 507), Mr. Justice Brewer, speaking for the court, said:

"The Constitution provides that 'a majority of each (house) shall constitute a quorum to do business.' In other words, when a majority are present the house is in a position to do business. Its capacity to transact business is then established, created by the mere presence of a majority, and does not depend upon the disposition or assent or action of any single member or fraction of the majority present. All that the Constitution requires is the presence of a majority, and when that majority are present the power of the house arises."

If it be assumed that the blank ballot was cast by a person present and entitled to vote, it could not be counted. In *Wightman* v. *Village of Tecumseh,* 157 Mich. 326, it was held (syllabus):

"Votes at a special election to authorize a bond issue, which bear distinguishing marks, are invalid for any purpose and should not be counted in determining the two-thirds majority."

In the opinion it was said (page 331): "A void vote is of no more effect than no vote."

In McCrary on Elections (4th Ed.), § 208, it is said:

"In such a case the only proper test of the number of persons entitled to vote is the result of the election as determined by the ballot box, and the courts will not go outside of that to inquire whether there were other persons entitled to vote who did not do so."

See, also, *Stebbins* v. *Judge of Superior Court*, 108 Mich. 693; *Shearer* v. *Board of Sup'rs of Bay Co.*, 128 Mich. 552.

It may be urged, and with force, that the rule applying to elections is not applicable to the vote of a legislative body, but it is persuasive as to the effect of the omission of a person to vote who is present and entitled to do so.

The decision in *Brown* v. *Nash*, 1 Wyo. 85, hinged upon the fact that the record affirmatively showed the presence of the speaker. He had asked to be excused from voting. He announced the vote, and the passage of the bill. It was, however, said:

"Now, if one of the members on the floor had asked to be excused, and had been so excused, there would perhaps have been nothing to show his presence, and the vote would have been complete."

If necessary, the writ will issue as prayed. No costs will be allowed.

CLARK and MCDONALD, JJ., concurred with SHARPE, J.

FELLOWS, J. (*concurring*). I concur in granting the writ on the first ground stated by Mr. Justice SHARPE.

SNOW and STEERE, JJ., concurred with FELLOWS, J.