CITY OF DETROIT *v.* COUNTY OF OAKLAND.

1. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—EXEMPTIONS.
   The exemption of municipal property from special assessments extends only to such property as is held for governmental purposes (CLS 1956, § 211.7, subd 3).

2. SAME—DRAINS—ZOOLOGICAL PARK—SPECIAL ASSESSMENT—EXEMPTION.
   City-owned zoological park and adjoining parking facilities, located in defendant county, were properly exempted from deficiency assessments for payment of bonds of drainage district within which the lands were located, since such properties were held and used for governmental or public purposes (Const 1908, art 8, § 22; PA 1909, No 279, § 4a, as added by PA 1921, No 353; CLS 1956, § 211.7, subd 3; Detroit Charter, title 3, ch 1, § 12[u]).

3. SAME—DRAINS—GOLF COURSE—SPECIAL ASSESSMENT—EXEMPTION.
   A city-owned golf course is a public park, since it is a pleasure ground for the recreation of the public to promote its health and enjoyment; hence, it is not subject to deficiency assessment for payment of bonds of drainage district within which it was located (Const 1908, art 8, § 22; PA 1909, No 279, § 4a, as added by PA 1921, No 353; CLS 1956, § 211.7, subd 3; Detroit Charter, title 3, ch 1, § 12[u]).

4. SAME—DRAINS—SPECIAL ASSESSMENTS—PAYMENT IN FULL—LIENS—DEFICIENCY ASSESSMENT.
   No statutory lien remained upon lands owned by city in defendant county and used by city for zoological park, an adjoining parking lot and for a golf course, where city voluntarily paid the entire assessment against it for drainage district within which the lands were located, since payment extinguished the lien arising by virtue of district created previous to city's acquisition, and where subsequent proceedings

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 48 Am Jur, Special or Local Assessments § 89.
[5] 14 Am Jur, Costs § 91.

were instituted for deficiency assessment, the city was not liable, since it was exempt (Const 1908, art 8, § 22; PA 1909, No 279, § 4a, as added by PA 1921, No 353; CLS 1956, § 211.7, subd 3; CL 1948, § 270.5; Detroit Charter, title 3, ch 1, § 12[u]).

5. COSTS—PUBLIC QUESTION—DRAINS—SPECIAL ASSESSMENTS—MUNICIPAL CORPORATION.

No costs are allowed in suit for declaration of rights as to liability of city for special assessment for deficiency in drainage district in which city-owned lands were located in another county, a public question being involved (Const 1908, art 8, § 22; PA 1909, No 279, § 4a, as added by PA 1921, No 353; CLS 1956, § 211.7, subd 3; CL 1948, § 270.5; Detroit Charter, title 3, ch 1, § 12[u]).

Appeal from Oakland; Doty (Frank L.), J. Submitted April 11, 1958. (Docket No. 47, Calendar No. 47,436.) Decided September 10, 1958.

Bill by the City of Detroit, a municipal corporation, against the County of Oakland, City of Huntington Woods, both municipal corporations, and certain of their officials for declaratory judgment seeking exemption from special drain assessments on lands occupied by zoological garden, parking area and public golf course. Decree for plaintiff granting partial relief. Plaintiff appeals. Defendant cross-appeals. Affirmed in part and reversed in part to give plaintiff exemption from assessments.

*Paul T. Dwyer,* Corporation Counsel, *Bert R. Sogge, Julius C. Pliskow* and *Lawrence E. Eaton,* Assistants Corporation Counsel, for plaintiff.

*Harry J. Merritt,* Corporation Counsel for Oakland County, *Charles A. Davis,* Assistant Corporation Counsel, and *James S. Thorburn,* Huntington Woods City Attorney, for defendants.

Smith, J.   This case involves the legality of certain deficiency drain assessments made upon properties owned by the city of Detroit, hereinafter termed appellant.   The properties were located in the Royal Oak drain district in Oakland county. Appellees are the county of Oakland and city of Huntington Woods, together with named public officials thereof.

The 3 properties involved are the zoological park, acquired in 1923, the adjacent parking lot, acquired in 1929 (both of which were opened to public use in 1928 and 1929, respectively), and the Rackham public golf course, acquired in 1924 and opened to public use in the same year.   The zoo and the golf course are administered, respectively, by the zoological park commission and the parks and recreation commission.   The funds for their maintenance and operation are appropriated by the Detroit common council pursuant to charter authority.

The proceedings with respect to the drain assessments are stated succinctly in the brief of the appellant, adopted in this respect by appellees, as follows:

"Proceedings for laying out and establishing the Royal Oak drain originated in 1925, resulting in an assessment levied on various lands included in said district.   Appellant paid in full the drain assessments on its lands therein on December 7, 1925, voluntarily and not under protest.

"Collections on the drain roll proving insufficient to pay the principal and interest on the bonds sold to finance said drain, the then drain commissioner entered an order on April 17, 1941, to effectuate refunding of the bonds and in said order provided for a plan of payment, and, if a deficiency existed, for an additional assessment to be levied upon property in said drain district except on the property which had been sold by the State of Michigan pur-

suant to PA 1937, No 155, as amended.* However, no steps were immediately taken to levy a deficiency assessment pursuant to said order.

"In the years 1950, 1951 and 1952 due to outstanding refunding bonds, the then drain commissioner caused to be placed upon lands in said drain district a deficiency assessment, but the subject properties of appellant were not among those upon which such deficiency assessment was then levied.

"Said deficiency assessment roll as and when first prepared in 1950 listed the aforedescribed properties of appellant as exempt; this status continuing during the subsequent deficiency assessments levied in 1951 and 1952. However, such listing was later arbitrarily ruled out by the Oakland county drain commissioner. Accordingly in the years 1953 and 1954, appellant's lands were included when an additional deficiency assessment was next placed upon the lands in said assessment district."

Appellant having refused to pay the deficiency assessments placed upon the lands, and a controversy existing between the parties with respect thereto, action was brought to obtain a declaratory decree under PA 1929, No 36 (CL 1948, § 691.501 et seq. [Stat Ann § 27.501 et seq.]). The principal facts were stipulated and after taking the testimony of Mr. Filkins, deputy drain commissioner of Oakland county, and the consideration thereof, together with pertinent exhibits, the trial chancellor held, in part, as follows:

"That such deficiency assessments placed on the Royal Oak drain district deficiency assessment rolls for 1953 and subsequent years to date hereof against plaintiff's zoological park and the parking lot adjoining the zoological park, more particularly described above, shall be and are hereby stricken and the amounts levied thereunder for each of said

* See CL 1948, § 211.351 et seq. [Stat Ann 1950 Rev § 7.951 et seq.].—Reporter.

years against plaintiff's said premises are cancelled.
\*   \*   \*

"That the relief sought by plaintiff for the Rackham golf course in said Royal Oak drain district be and the same is hereby denied for the reasons stated in the court's opinion."

The city of Detroit has appealed the determination as to the golf course, and the county of Oakland, *et al,* as to the zoo and parking lot.

It is provided by statute (CLS 1956, § 211.7 [Stat Ann 1957 Cum Supp § 7.7]), as follows:

"The following property shall be exempt from taxation:   \*   \*   \*
"Third, lands owned by any county, township, city, village or school district and buildings thereon, used for public purposes."

We have decided heretofore (*Newberry* v. *City of Detroit,* 164 Mich 410, 413 [32 LRA NS 303]) "that in this State the exemption of municipal property *from special assessments* extended only to such property as is held for governmental purposes," citing *City of Big Rapids* v. *Mecosta Board of Supervisors,* 99 Mich 351.   (Emphasis added.)   See, also, our comprehensive review of the problem in *People, ex rel. Auditor General,* v. *Ingalls,* 238 Mich 423, 425, 426, wherein we held:

"The doctrine has been pretty well settled in this State and elsewhere that property owned by the State or by the United States is not subject to taxation unless so provided by positive legislation.   And municipalities and State agencies are included in this class when their property is used for public purposes.   \*   \*   \*
"But counsel say the property\* which the city of Detroit has assessed is not used for governmental

---

\* Special assessment was here made against the Michigan State Fair grounds, owned by the State of Michigan.

purposes. This is a provision which applies when it is sought to charge a municipality or State agency with taxation, but does not apply to the Federal or State governments. It is of no consequence what use the State makes of its property. The same reason exists for not taxing State property not in governmental use as exists for taxing State property in govermental use. Therefore, the question as to the use made of the fair grounds by the State is immaterial.

"That the foregoing rule is in force in Michigan is supported by *City of Big Rapids* v. *Board of Supervisors of Mecosta County*, 99 Mich 351, where the city authorities sought to enforce a special assessment against the county grounds and buildings. There was no question about the county building being used for governmental purposes. In denying the right of the city to impose the tax, it was said:

"'Implied exemptions exist where property is owned and held by the State, its political subdivisions, and its municipalities for governmental purposes. A county is one of the political subdivisions of the State. It would seem to follow that only such burdens of taxation can be imposed upon this property as are expressly provided by law. * * * Whenever the taxing power seeks to impose a tax upon such property it must be able to point to legislative or constitutional authority;' citing authorities."

It is clear from the foregoing that we are remitted to the question of whether or not the golf course, the zoo, and its parking lot are being used for public or governmental purposes.

It is provided in the Michigan Constitution (1908), art 8, § 22, as follows:

"Any city or village may acquire, own, establish and maintain, either within or without its corporate limits, parks, boulevards, cemeteries, hospitals, almshouses and all works which involve the public health or safety."

The provisions of PA 1909, No 279 (home-rule cities), are in harmony therewith, it being provided in section 4a (added by PA 1921, No 353), as follows:

"Each city may provide in its charter for the acquisition by gift of real or personal property made by grant, devise, bequest or in any other manner, for public parks, grounds, boulevards, zoological gardens, cemeteries, public buildings and other public purposes, whether made directly or in trust, and whether within or without its corporate limits, or within or without the corporate limits of the county in which such city is located; and for the appropriation, by the common council of such city, of funds for the maintenance and upkeep of such gifts, so acquired, as such common council may set aside for said purposes."*

Likewise the charter of the city of Detroit, title 3, ch 1, § 12(u), provided as follows:

"To acquire by gift, grant, devise, bequest or any other manner real or personal property, for public parks, grounds, boulevards, zoological gardens, cemeteries, public buildings and other public purposes, whether such property is acquired directly or in trust, and whether such property is located within or without the corporate limits of the city of Detroit, or within or without the corporate limits of the county of Wayne; and to provide for the appropriation of such funds for the maintenance and upkeep of such property, so acquired, as the common council may set aside for said purpose."

It is stipulated by the parties with respect to the use and maintenance of these properties as follows:

"That the above lands were acquired for the purpose of establishing a zoo together with adjoining

---

* Subsequent amendments have set forth permissible charter provisions in detail. See CL 1948 and CLS 1956, § 117.4a *et seq.*, particularly CLS 1956, § 117.4e (Stat Ann 1949 Rev and Stat Ann 1957 Cum Supp, § 5.2074 *et seq.*, particularly Stat Ann 1957 Cum Supp § 5.2078).

public parking facilities for the counties of Wayne, Oakland and Macomb.

"That the said zoological park was open for admission to the public on August 1, 1928, and said parking area approximately September 1, 1929, being dedicated to the general public by the city of Detroit and operated as a governmental function supported by tax funds appropriated therefor and same have been used continuously since said respective dates, for public purposes.    *    *    *

"That the said golf course was opened for the use of the public in August, 1924, being dedicated to the general public by the city of Detroit and operated as a governmental function supported by tax funds appropriated therefor and same has been used continuously since August, 1924, for public purposes."

The trial chancellor's conclusion that the zoological park and the parking lot adjoining are not subject to the deficiency assessment placed against them was correct. These properties were held and used for governmental or public purposes.

As to the golf course, a similar problem was presented to the supreme court of Minnesota in the case of *Booth* v. *City of Minneapolis*, 163 Minn 223, (203 NW 625), wherein the authority of the city to purchase the properties in question was challenged In upholding the said authority the court held in part as follows (p 225):

"The home-rule charter is based upon section 1271, GS 1923, which authorizes the city to take property without its boundaries 'needed for the full discharge of any public function which it is permitted to exercise.' It is suggested that 'public function' relates to water supply, drainage and all forms of transportation. We see no justification for the limited construction. In fact a municipality has a peculiar interest in the recreation or the pleasure of the public. 19 RCL 721. Public parks in all the metropolitan cities contain golf courses. The public

courses in parks are within financial reach of all. The golf course being a place of recreation must be included in the terms 'parks and parkways' as used in the city charter and 'public function' as used in the statute. A park is a pleasure ground for the recreation of the public to promote its health and enjoyment. A public golf course is for the same purpose. Parks are used for public recreation by indulgence in tennis, pitching horseshoes, croquet, baseball, kitten ball, golf, walking, horseback riding, picnicking, skating, bathing and general outdoor exercise, band concerts, maintenance of botanical and zoological gardens and other recreations. If ground be acquired for these purposes, it may be acquired for a part of them. It follows that the city has authority, under its charter, section 2, chapter 16, and also under the statute, section 1271, GS 1923, to acquire and maintain a public golf course."

It is clear from the above that the term "governmental purpose" is not so limited as appellees contend, and the case of *People, ex rel. Le Roy,* v. *Hurlbut,* 24 Mich 44 (9 Am Rep 103), is not to the contrary. The golf course in question comes within the definition of a public park. We agree with the factual determination of the trial chancellor that it is used continuously for public purposes. It is our conclusion of law therefore, that it is not liable for the special assessments made.

It is also the contention of appellees, "that at the time of the acquisition of the zoo property and the parking lot, the original assessment of benefits having been made, the possibility of reassessment constituted a lien, or encumbrance, which subsisted even though the city of Detroit might be exempt from other taxes." It is stipulated by the parties that the zoo and parking lot were opened to public use in the fall of 1928 and 1929, respectively. Prior thereto, however, certain proceedings were had with

respect to the Royal Oak drain. We quote from the facts stipulated:

"(6) That the county drain commissioner of Oakland county in the year of 1925 ascertained that it was necessary to build a so-called Royal Oak drain; that said proceedings for the laying out of the establishment of the drain were regularly and properly had; an assessment was levied on the various lands in the said district, including the lands of the plaintiff; that plaintiff on December 7, 1925, paid said drain assessments in full, voluntarily and not under protest.

"(7) That the collection on said roll being insufficient to pay the principal and interest on the bonds sold to finance said drain, the then drain commissioner, Earl Clark, on April 17, 1941, entered an order to effectuate the refunding of the bonds and in said order provided for a plan of payment, and, if a deficiency existed, for an additional assessment to be levied upon the property in the said drain district except on that property which had been sold by the State of Michigan pursuant to PA 1937, No 155, as amended."

The difficulty with appellees' position is that the payment by the city of Detroit of the assessments levied on the original roll, extinguished the lien of the statute. (CL 1948, § 270.5 [Stat Ann 1952 Rev § 11.91].) There was, subsequent to this payment, nothing unpaid to be secured by lien. New proceedings were required (and taken) at a later date in order to provide the basis for the deficiency assessments subsequently levied. In point is *Mullen Benevolent Corporation* v. *United States,* 290 US 89 (54 S Ct 38, 78 L ed 192). In this case, the United States acquired certain properties against which special assessments had been levied, but (p 91), "As title to each lot was obtained the United States paid or caused to be paid all existing assessments against

the lot." The properties were later reassessed for deficiencies. With respect to the issue before us the court held as follows (p 95):

"What has been said shows that the respondent did not take or destroy any lien belonging to the petitioner. None remained upon the land, when the purchases were consummated. The reassessments were the result of proceedings begun thereafter. They were ineffective to create a lien upon lands owned by the government. *United States* v. *Buffalo* (CCA), 54 F2d 471."

The reasoning is equally applicable to the situation before us.

The decree of the trial chancellor is affirmed with respect to the zoo and parking lot, reversed as to the golf course, and the case is remanded for entry of decree in accordance herewith. No costs, a public question.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.