TOWNSHIP OF SOUTHFIELD v. DRAINAGE BOARD FOR
TWELVE TOWNS RELIEF DRAINS.

CITY OF TROY v. SAME.

1. TOWNSHIPS—DRAINS—TAX LIMITATION—CONSTITUTIONAL LAW.
    Unchartered townships located within district assessable at large
        for benefits from intracounty drain are not municipal corpo-
        rations within the meaning of the excepting clause of the 15-
        mill tax-limitation amendment of the Constitution, hence, are
        subject to the 15-mill tax-limitation provision (Const 1908,
        art 10, § 21, as amended in 1948).

2. CONSTITUTIONAL LAW—CONSTRUCTION OF AMENDMENT—TAX LIM-
    ITATION—MUNICIPAL CORPORATIONS.
    "Municipal corporations", as the term was fixed by usage and
        subsequent judicial decisions in excepting clause of 15-mill
        tax-limitation amendment to the Constitution, includes incor-.
        porated villages, fourth class cities, special charter cities,
        home-rule cities, charter townships and school districts which
        are organized as full-fledged public corporations (Const 1908,
        art 10, § 21, as added in 1932 and amended in 1948).

3. SAME—CONSTRUCTION OF AMENDMENT—TAX LIMITATION—TOWN-
    SHIPS.
    The language of the 15-mill tax-limitation amendment of the
        Constitution is clear and unambiguous as it applies to un-
        chartered townships and limits the taxing power of a township
        to what it may receive from the allocation of the 15 mills plus
        any increase voted by its electors (Const 1908, art 10, § 21, as
        amended in 1948).

REFERENCES FOR POINTS IN HEADNOTES
[1]  17A Am Jur, Drains and Sewers § 60 et seq.
[2]  37 Am Jur, Municipal Corporations §§ 3–6.
[4]  37 Am Jur, Municipal Corporations § 91.
[5, 6]  17A Am Jur, Drains and Sewers § 65.
[7]  50 Am Jur, Statutes § 28.
[10]  17 Am Jur, Drains and Sewers § 27.
[12]  17A Am Jur, Drains and Sewers § 67.
[15]  17A Am Jur, Drains and Sewers § 41 et seq.

4. MUNICIPAL CORPORATIONS—TAXATION—LEGISLATURE.

The legislature may, in the absence of constitutional restriction, impose compulsory taxation on a municipal corporation, where the municipality acts as the agency of the State government.

5. HEALTH—LEGISLATURE—DRAINS.

The legislature has supreme power in matters affecting the public health and may provide for financing of drainage projects in the furtherance thereof in the absence of constitutional limitations.

6. DRAINS — STATUTES — HEALTH — COUNTIES — TOWNSHIPS — PUBLIC FUNDS — SALES TAX MONEYS.

The legislature properly exercised its prerogative in providing that moneys belonging to a township could be used for a health project, such as a drain, but provision that deductions for reimbursement of county advancements to the township could be made from "any moneys * * * then or thereafter payable" to the township was in conflict with mandate of Constitution that county treasurer "*shall* remit to the * * * townships * * * on a per capita basis" a portion of the sales tax moneys returned to local governmental units, hence, the county treasurer may not retain such funds (Const 1908, art 10, § 23, as amended in 1954; CLS 1956, § 280.474).

7. WORDS AND PHRASES—SHALL—DISCRETION OF OFFICERS.

The word "shall" is mandatory and imperative and when used in a command to a public official, it excludes the idea of discretion.

8. MUNICIPAL CORPORATIONS—DRAINS—STATUTES—CHARTERS.

Mandatory statutory provisions in the drain code are read into and become a part of the charters of cities involved so as to remove the indebtedness resulting from participation in an intracounty drain from statutory or charter limitations (CLS 1956, §§ 280.473, 280.475).

9. DRAINS—METROPOLITAN DISTRICTS—STATUTES—CONSTITUTIONAL LAW.

The chapter of the drain code relative to intracounty drains for public health *held*, not unconstitutional because of the metropolitan district amendment of the Constitution, since there was no provision in such amendment evincing an intention to abolish the drain procedure which had been established long before adoption of the amendment (Const 1908, art 8, § 31; CLS 1956, § 280.461 *et seq.*).

10. SAME—INTRACOUNTY DRAIN—PUBLIC HEALTH—PETITIONS.

Provision of drain code empowering 2 or more public corporations to petition county drain commissioner for the establishment of a county drain for public health purposes was not invalid because of provision for assessment of other public corporations which had not signed the petition, where they had notice and an opportunity to be heard prior to assessment (CLS 1956, § 280.463).

11. SAME—ASSESSMENT—ZOO—GOLF COURSE—COUNTIES.

Assumption by county of apportionment of drain assessment on account of zoological garden and golf course, owned and operated by city located in adjacent county but not subject to special assessment for drains, was authorized to be made by favorable vote of 2/3 of the members-elect, since counties may contribute to the operation of public parks and public zoological gardens (CL 1948, §§ 318.51–318.54; CLS 1956, § 280.468).

12. SAME—PUBLIC HEALTH—MUNICIPAL CORPORATIONS—ASSESSMENT AT LARGE.

A city as a unit is responsible for the health of the entire city and each part thereof, hence, the assessment of an entire city for apportionment based on fact that 2% of its area was included within district of intracounty public health drain was proper (CLS 1956, § 280.461 *et seq.*).

13. SAME—COUNTIES—BONDS—DEFICIENCY.

The legislature has full power to require a county to pay from its general fund any deficiency accruing on drainage bonds.

14. COUNTIES—PUBLIC FUNDS—GRANT OF CREDIT.

The fact that the legislature directs one unit of county government to use its funds in the aid of another unit does not operate as a grant of credit in violation of the Constitution (Const 1908, art 10, § 12; CLS 1956, § 280.461 *et seq.*).

15. DRAINS—FINAL ORDER OF DETERMINATION—REHEARING—PREJUDICE.

A rehearing after entry of final order of determination as to route of proposed intracounty public health drain after route and district were altered as to 2 public corporations is not ordered, where such corporations fail to show any prejudice or damage due to such alteration (CLS 1956, § 280.461 *et seq.*).

16. COSTS—PUBLIC QUESTION—PUBLIC HEALTH DRAINS.

No costs are allowed in suits involving determination of validity of intracounty public health drain, where public question and public corporations are involved (CLS 1956, § 280.461 *et seq.*).

Appeal from Oakland; Holland (H. Russel), J. Submitted January 13, 1959. (Docket Nos. 57, 75, Calendar Nos. 47,947, 47,981.) Decided July 13, 1959.

Two separate bills, one by the Township of Southfield and one by the City of Troy against Ralph H. Main, Oakland county drain commissioner, succeeded in office by Daniel W. Barry, other county officials and their successors, constituting and acting as the Drainage Board for the Twelve Towns Relief Drains, to enjoin certain actions in the construction of, and assessment for, an intracounty drain system. The Township of Royal Oak, the City of Southfield and the Village of Westwood intervened as parties plaintiff in first action. The City of Ferndale intervened as party defendant in second action. The City of Huntington Woods, City of Oak Park, City of Hazel Park, City of Madison Heights, City of Royal Oak and City of Berkley intervened as parties defendant in both actions. Actions consolidated for hearing and appeal. Paul L. Adams, Attorney General, intervened in the public interest. Temporary restraining orders dissolved and bills dismissed with certain findings of fact and law. Plaintiff City of Troy and intervening plaintiff City of Southfield, now asserting rights originally claimed by the plaintiff Township of Southfield, and the intervening plaintiff Township of Royal Oak appeal. Principal defendants cross appeal. Affirmed in part, reversed in part and remanded.

*James C. Allen,* for intervening plaintiff City of Southfield.

*Burke & Osgood (Stanley E. Burke,* of counsel), for plaintiff City of Troy.

*Maurice A. Merritt,* for intervening plaintiff Township of Royal Oak.

*Norman R. Barnard,* Corporation Counsel of County of Oakland, *Charles A. Davis* and *Robert P. Allen,* Assistant Corporation Counsel (*Claude H. Stevens,* of counsel), for defendants.

*James S. Thorburn,* for intervening defendant City of Huntington Woods.

*Carl Forsythe,* for intervening defendant City of Oak Park.

*Jack Moskowitz,* for intervening defendant City of Hazel Park.

*H. Eugene Field,* for intervening defendant City of Madison Heights.

*Allan G. Hertler,* for intervening defendant City of Royal Oak.

*John H. Norton,* for intervening defendant City of Berkley.

*Orph C. Holmes,* for intervening defendant City of Ferndale.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *G. Douglas Clapperton* and

*Florence N. Clement,* Assistants Attorney General, for intervening Attorney General.

KAVANAGH, J.  The plaintiffs township of Southfield and city of Troy filed separate bills of complaint to enjoin certain actions of the drainage board in connection with the financing, construction and assessment of the cost of the relief drains proposed to be constructed between 8-Mile road and 15-Mile road and between John R road and Southfield road in Oakland county.  Defendants are the Oakland county drain commissioner, chairman of the Oakland county board of auditors, and the chairman of the Oakland county board of supervisors, acting as the drainage board for the Twelve Towns Relief Drains. The city of Huntington Woods, the city of Oak Park, the city of Hazel Park, the city of Madison Heights, the city of Royal Oak, the city of Berkley, the city of Ferndale, the city of Southfield, the village of Westwood, and the township of Royal Oak have intervened.  Each municipality is a party by virtue of an order allowing said intervention.  Paul L. Adams, attorney general of the State of Michigan, intervened under his general powers and is presently a party by virtue of an order of intervention.

The 2 cases were consolidated for trial by order of the court and as combined are here on appeal. These cases involve the interpretation and application of chapter 20, PA 1956, No 40, or the drain code, commencing with CLS 1956, § 280.461 (Stat Ann 1957 Cum Supp § 11.1461).

A lengthy record is presented on appeal, together with exhibits in excess of 50, giving some indication of the complexity of the problems.

The estimated cost of the relief drains involved is in the neighborhood of $44,000,000.  No one disputes the matter of the drains being necessary for

public health. Therefore, no discussion will be given to that particular point.

Numerous changes have taken place in the governments of the respective municipalities since the institution of these proceedings. The original petition to establish a system of relief drains was signed by the cities of Birmingham, Ferndale, Hazel Park, Huntington Woods, Oak Park, Pleasant Ridge, Royal Oak and the townships of Royal Oak and Troy. Neither the township of Southfield nor the city of Troy, nor any of the intervening parties hereto, except as above named, joined in said petition. In about 1952 preliminary investigations paid for by most of these communities were carried on. The townships of Southfield and Troy shared in the cost of this exploratory effort. However, Southfield never, by any action of its governing body, agreed to become a part of the plan which was ultimately devised. Since the filing of the petition the township of Royal Oak has been reduced in size by reason of the incorporation of the city of Madison Heights from said township territory. Since the trial Southfield has been reduced by the incorporation of the village of Westwood. Since the trial the city of Southfield has been formed out of the township of Southfield. Earlier, after the petition was filed, practically all of the township of Troy was incorporated into the city of Troy.

At a meeting of the drainage board on November 10, 1955, the board considered the petition and by resolution adopted at said meeting set December 15, 1955, as the date of the first hearing. Determination by the drainage board was made as follows:

"It has become necessary for the public health to supplement said existing county drains by the construction of relief drains as set forth in said petition."

The December 15, 1955, hearing was adjourned until January 17, 1956, at 10 a.m. At said hearings on both December 15, 1955, and January 17, 1956, no objections were made to the petition, to the project or to the designation of the public corporations to be assessed. The meeting of January 17, 1956, was adjourned to January 27, 1956. At the meeting on January 27, 1956, two minor changes were made in the routes of the relief drains from those set forth in the petition. No question is raised in this case with respect to said changes.

A final order of determination was made and entered by the drainage board on January 27, 1956. Neither the final order of determination nor the resolution in support thereof contains any statement or findings concerning the matter of public health. However, the minutes of the board meeting of January 27, 1956, recite that "the necessary proceedings have been taken in respect to said petition including the holding of a hearing for the purpose of receiving any objections to the proposed project." The minutes further recite that "said petition is sufficient in all respects."

On January 27, 1956, three separate engineering firms were retained to do the engineering work. Cost estimates were presented by the 3 engineering firms on August 13, 1956. The total estimated cost was $38,581,000.

On September 4, 1956, the board approved the plans and specifications and the estimates of cost aggregating $38,581,000 and adopted a tentative apportionment setting forth the percentage of the cost to be borne by each of the public corporations to be assessed.

At a meeting of the board on September 4, 1956, October 12, 1956, was set as the date of hearing upon apportionments. This hearing was not held,

restraining orders having been issued upon the institution of these suits.

At the time of the original planning of the Twelve Towns Relief Drains no portion of the said system was to be physically located within Southfield township. At the time the final order of determination was entered on January 27, 1956, and as late as October, 1956, when the drainage board proposed to enter its final order of apportionment, it was thought that no physical part of the system was to be constructed in Southfield township. Since the dates mentioned the board, without any new hearings or any new or amended final order of determination, extended the course of the relief-drains system into a portion of the township and increased the cost to be borne by Southfield township from $811,046.80 to $4,295,893.91.

The court in its opinion made a finding that due to the topography of Southfield township approximately the easterly 1/12 of said township can be benefited by the Twelve Towns system. About 11/12 of the entire township must drain westward into the Rouge River system.

Although it was not initially anticipated that any of the Twelve Towns system would be physically located in the plaintiff township, there were 596.336 acres of land in said township included in the drainage district, which acreage was to be served by the Twelve Towns system. Under the latest revised plans some of the physical structures of the drains will be located in the township and 1,948.714 acres of land in said township have been included in the drainage district. This revision in plans came about apparently by testimony of witnesses that the River Rouge is now overloaded and is not in a position to take storm waters not in an area within the River Rouge basin.

The court in its opinion made a finding that the area within Southfield township now included in the Twelve Towns district has been for many years in the drain district for the Royal Oak drain, which empties into Red Run drain, which discharges into the Clinton river. The court further made a finding in its opinion that it is logical, feasible and necessary for that part of Southfield township which is proposed to be a part of the Twelve Towns system to remain a part of the Clinton basin as opposed to being a part of the River Rouge basin.

The tentative apportionments of cost made on September 4, 1956, were later rescinded after changes were made in the plans and specifications by the engineers at the direction of the drainage board which would enlarge a portion of the drains and permit the inclusion of 1,352.78 acres in Southfield township, which had been previously in the Royal Oak drainage district. The acreage in the city of Troy was reduced by 370.516 acres because of the elimination of acreage in the city of Troy, which was not within one of the original drain districts, except for 2 small parcels.

The formula used to determine the apportionment of a particular municipality's share in the drainage project was as follows: Cost of the new drains plus today's value of the old existing drains, multiplied by the percentage of the area in each public corporation within the drainage system, minus the contributions by the particular municipality for the old drains, but which contribution was appreciated in terms of today's values.

Approximately 2% of the total area of the city of Troy is in the proposed drainage district to be relieved, and properties and persons in the north and northeasterly portion of the city of Troy receive no tangible or direct benefits by reason of the inclusion

of the 2% area of the city of Troy in the drainage area.

Additional facts necessary to understand the questions presented are that when Royal Oak township officials signed the original petition the township consisted of the area now known as Madison Heights and the township's present area, then known as the west end of the township. The city of Madison Heights came into being on December 9, 1955. Royal Oak Township has an area of 424.408 acres, all of which is in the proposed drain area. Four school districts lie partially within said township. The voted millage to be used for assessment purposes for School District No. 3 Fractional, Royal Oak, Southfield and city of Oak Park is 47.85 mills. The other 3 school districts each have a voted millage of less than the said 47.85 mills.

In the cities of Huntington Woods and Royal Oak there are located the Detroit Zoological Park and the Rackham Golf Course, which are owned and operated by the city of Detroit. These properties constitute 246.730 acres and are not subject to *ad valorem* taxation. The amount which was to be assessed on account of these properties was distributed among the several public corporations to be assessed. Upon objection, the board of supervisors of Oakland county, by resolution adopted March 8, 1957, agreed to assume and pay the cost attributable to these 2 Detroit properties.

It is contended that article 10, § 21, of the Michigan Constitution of 1908, as amended in 1948, limits the total amount of taxes assessed against property for all purposes for a period not to exceed 20 years, at 50 mills, if a majority vote should approve an increase to that limit.

The assessed valuation of Royal Oak township, as presently constituted, and at State equalized figures,

is $5,477,315. No voted increase has been authorized to the constitutional tax limitation of 50 mills.

The lower court held as follows:

"1. That the petition (exhibit 1) need not have been signed by all of those included in the Twelve Towns System in order to give the board jurisdiction—only 2 or more subject to assessments being necessary.

"2. That chapter 20 of the code is constitutional and valid.

"3. That the constitutional tax limitation contained in article 10, § 21 of the Michigan Constitution of 1908 has application as to the extent to which the townships may participate in the cost of said drain.

"4. That said constitutional tax limitation contained in article 10, § 21 of the Michigan Constitution of 1908 does not limit the cities as to the extent to which they may participate in the cost of said drain.

"5. That the construction of the Twelve Towns drain is necessary for the public health and that the board was justified in so finding in its initial resolution.

"6. That the successive steps taken by the board were in compliance with the code.

"7. That further notice be given the public corporations constituting the Twelve Towns System prior to the hearing of objections to the tentative apportionments, and the making of the 'final order of apportionment.'

"8. That the restraining orders heretofore issued be dissolved."

Intervening plaintiff Royal Oak township appeals and raises 2 questions:

1. "Is the drain code (sections 473 and 475 of PA 1956, No 40), insofar as it authorizes assessments of taxes by the county drainage board, without regard for debt limitation of unchartered townships, unconstitutional?"

2. "Is section 474 of the drain code an indirect attempt to flout the constitutional debt limitation of unchartered townships?"

The city of Troy and the city of Southfield appeal and raise 5 questions:

1. "Is chapter 20 of the drain code of 1956 unconstitutional because of the provisions of section 31 of article 8 of the Michigan Constitution pertaining to metropolitan districts?"

2. "Under chapter 20, of PA 1956, No 40, may a public corporation which did not authorize the signing of the required petition, and which did not sign the petition, be charged with liability for the payment of a part of the cost of the proposed drain?"

3. "Should the cities of Detroit, Royal Oak and Huntington Woods have been included in the drainage board's final order of determination as a municipality to be taxed for some portion of the drain by reason of the golf course and the zoo located partially in Huntington Woods and Royal Oak?"

4. "Is the inclusion of that portion of the service area (described in the drainage board resolution of September 25, 1957), of the Twelve Towns Relief Drains lying within the city of Troy a proper exercise of the powers of the drainage board and not contrary to law?"

5. "Under chapter 20 of PA 1956, No 40, may the drainage board after the entry of its 'Final Order of Determination' change the route of the proposed drain without holding further hearings and without entering a new final order of determination?"

We think the lower court was correct in its ruling that Royal Oak township and the other townships involved in the Twelve Towns Relief Drains were bound by the 15-mill tax limitation prescribed in. article 10, § 21,* of the Michigan Constitution of 1908, as amended in 1948. It is not necessary for us·

* Added in 1932.—REPORTER.

in this case to restate the history and legal background of the 15-mill amendment as discussed by Justice Black in *Bacon* v. *Kent-Ottawa Metropolitan Water Authority,* 354 Mich 159. Suffice it to say that this is another in a long line of attempts by subterfuge to circumvent the effect of the 15-mill limitation in the Constitution. It is true, as urged by defendants, that a township has been defined as a municipality for certain purposes and under Michigan law, " 'as fixed by usage and recognition' when the amendment was adopted, incorporated villages, fourth-class cities, special charter cities and home-rule cities were known as and commonly referred to as municipal corporations." See *Bacon* v. *Kent-Ottawa Metropolitan Water Authority, supra,* at pp 171, 172. Subsequently we have added by case law charter townships and school districts. Now we are asked by defendants to add to this growing list townships themselves.

Defendants argue that the township of Royal Oak is a municipal corporation; that the statutes of the State of Michigan are its charter; and that the provisions of sections 474 and 475 of the drain code (CLS 1956, §§ 280.474, 280.475 [Stat Ann 1957 Cum Supp §§ 11.1474, 11.1475]) operate as a charter increase of the 15-mill tax limitation.

We again refer, as did Justice Black in *Bacon* v. *Kent-Ottawa Metropolitan Water Authority, supra,* to American Jurisprudence for a distinction between public corporations and municipal corporations. We quote, as did he (pp 172, 173), from 37 Am Jur Municipal Corporations, § 6, pp 623, 624:

" 'All municipal corporations are public bodies created for civil or political purposes; but all civil, political, public corporations are not, in the proper use of language, municipal corporations. A municipal corporation must be distinguished, on the one hand, from other governmental bodies which al-

though municipal are not corporations, and, on the other hand, from corporations which although public are not municipal. While the term "municipal corporation" is sometimes used, in its broader meaning, to include such public bodies as the State and each of the governmental subdivisions of the State,— such as counties, parishes, townships, hundreds, et cetera,—it ordinarily applies only to cities, villages, and towns which are organized as full-fledged public corporations.' "

We conclude, as did Justice BLACK, that on these premises the townships involved in the Twelve Towns Relief Drains are not municipal corporations within the meaning, purpose, spirit, or intent of the 15-mill amendment.

*Charter Township of Warren* v. *Municipal Finance Commission,* 341 Mich 607, is not authority for the position of defendants since Warren township was a charter township. Those townships in the instant case are not. Neither are *Hall* v. *Ira Township,* 348 Mich 402, or *Kent County Board of Education* v. *Kent County Tax Allocation Board,* 350 Mich 327, authority or support for the position of defendants. We feel the lower court was correct in this statement of the law when he said:

"Townships are subject to the tax limitation imposed by the Constitution of 1½% of the assessed valuation of said property."

The language of article 10, § 21, of the Constitution of 1908, as amended in 1948, is clear and unambiguous as it relates to townships. There is no case law which would be persuasive of a contrary holding. The taxing power of a township is what it may receive from the allocation of the 15-mills plus any increase voted by its electors. Any participation by the townships shall be so limited.

The second question raised by Royal Oak township is: Is section 474 of the drain code an indirect attempt to flout the constitutional tax limitation of unchartered townships, and is it as a consequence in violation thereof? Section 474 complained of reads as follows:

"If any such public corporation shall fail or neglect to so account to the county treasurer for the amount of any such installment and interest, then the county treasurer shall advance the amount thereof from county funds and deduct the same from any moneys (other than those pledged for the payment of debts) then or thereafter payable by him to such public corporation. The board of supervisors of any county which shall have advanced any money for a public corporation and which shall not have been reimbursed therefor, may order such public corporation and its officers to levy upon its next tax roll an amount sufficient to make such reimbursement on or before the date when its taxes become delinquent; and it shall be the duty of such public corporation and its tax levying and collecting officials to levy and collect such taxes and to reimburse the county: Provided, That the foregoing shall not prevent the county from obtaining reimbursement by any other legal method." (CLS 1956, § 280.474 [Stat Ann 1957 Cum Supp § 11.1474].)

It is the contention of Royal Oak township that the provisions in section 474 of the drain code are in conflict with article 10, § 23, of the State Constitution of 1908, as amended in 1954, which reads as follows:

"On and after July 1, 1955, there shall be returned to local governmental units by the method hereinafter set forth, 1/2 cent of a State sales tax levy on each dollar of sales of tangible personal property on the 1946 statutory base (not rate). The State disbursing authority shall remit to counties as a

whole on a population basis and payment shall be made to the county treasurer who shall remit to the respective cities, townships and villages within the county on a per capita basis."

The legislature has lately provided that the township board in its discretion may provide for the payment of a township-at-large drain assessment out of the general or contingent fund of the township. CLS 1956, § 280.263 (Stat Ann 1957 Cum Supp § 11.1263).

Under chapter 20, § 474, of the drain code, each public corporation is required to pay the full amount of the installment on or before the due date thereof. The section further provides for the levying of a tax sufficient to pay each installment with interest as the same becomes due unless there shall have been set aside moneys sufficient therefor.

It is admitted that the Twelve Towns Drains is a health project. The legislature in the absence of constitutional limitations can and has provided how this drainage project will be financed. This principle is recognized and stated in 17A Am Jur, Drains and Sewers, § 64, pp 486, 487. The general rule is also stated in 16 McQuillin, Municipal Corporations (3d ed), § 44.33, p 96, as follows:

"In the absence of constitutional restriction, compulsory taxation may be imposed on a municipal corporation by the legislature in all those cases wherein the municipality acts as the agency of the State government."

The general principle that the legislature has supreme power in matters affecting the public health was stated by Justice COOLEY in *Sheley* v. *City of Detroit,* 45 Mich 431, 432, 433, as follows:

"The questions, then, are questions of legislative power. Whether this method of apportioning the

cost of pavement or of repavement is equitable or just or politic, is in no way involved in this suit, and we should depart from our legitimate province if we were to volunteer an opinion upon it. The legislature, acting within the sphere of its powers in the making of laws, judges, and judges finally, upon all questions of policy and of equity. If the legislature declares the cost shall be collected by general levy, or on the other hand shall be levied upon abutting lots or their owners according to values, or to assessed benefits or to frontage, the determination binds us absolutely and conclusively, provided we discover no want of legislative authority."

In adopting section 474 of the drain code the legislature exercised its prerogative that moneys belonging to the township could be used for a health project. This they had a right to do. There is no question here as to the misuse of such moneys by reason of section 474 of the drain code. The only violation of article 10, § 23, of the Constitution consists in that portion of section 474 of the drain code which reads as follows:

"and deduct the same from any moneys (other than those pledged for the payment of debts) then or thereafter payable by him to such public corporation."

This language of the drain code is in conflict with article 10, § 23, of the Constitution of 1908, as amended in 1954. The provision in this article provides, in part, that "there shall be returned to local governmental units" and further provides, in part, the county treasurer shall "remit to the respective cities, townships and villages."

The use of the word "shall" is mandatory and imperative and, when used in a command to a public official, it excludes the idea of discretion. *People*

v. *De La Mater*, 213 Mich 167; *Ladies of the Maccabees* v. *Commissioner of Insurance*, 235 Mich 459. This provision of the drain code, being in conflict with the above constitutional direction, is void and therefore cannot authorize retention by the county treasurer.

Royal Oak township contends that section 473 of said act (CLS 1956, § 280.473 [Stat Ann Spec 1956 Drain Code Supp § 11.1473]) is unconstitutional in that it authorizes levy of property taxes unlimited as to rate and amount by authorizing the drainage board through its chairman to prepare a special assessment roll assessing the estimated (or actual, if ascertained) cost of the drain against the several public corporations in accordance with the confirmed apportionments. The township also contends that section 475 of the act (CLS 1956, § 280.475 [Stat Ann 1957 Cum Supp § 11.1475]) is unconstitutional in that it tends to put all such tax assessments outside the constitutional tax limitation by removing the resulting indebtedness from the statutory or charter limitation.

With the exception of unchartered townships, which we have disposed of above, there is no question as to the right of the statute being read into and becoming a part of the charter of the cities involved so as to remove the resulting indebtedness from statutory or charter limitations. *School District of City of Pontiac* v. *City of Pontiac*, 262 Mich 338; *City of Hazel Park* v. *Municipal Finance Commission*, 317 Mich 582; *Saginaw Council* v. *Board of Trustees*, 321 Mich 641.

It is further contended that chapter 20 of the drain code is unconstitutional because of the provisions of article 8, § 31, of the Michigan Constitution of 1908 pertaining to metropolitan districts, and providing for the incorporation of such districts

by 2 or more cities, villages or townships for the purpose, among others, of supplying sewage disposal or drainage.

We do not think the electors, in adopting the metropolitan district amendment, intended to abolish the drain procedure, which was established by statute long before the metropolitan drainage district constitutional amendment. If the people intended to do so, they would have added a specific provision to that effect. We find no constitutional problem in this regard.

Under the drain code it is argued that public corporations which did not authorize the signing of the required petition, and did not sign the petition, cannot be charged with liability for part of the payment of the cost of the drain.

At the time of filing of the petition, it was governed by section 3 of chapter 18-A of the former drain act (CLS 1954, § 278A.3 [Stat Ann 1952 Rev § 11.147(3)]). Said section, without change in wording, was incorporated in the drain code of 1956 as section 463 of chapter 20 (CLS 1956, § 280.463 [Stat Ann 1957 Cum Supp § 11.1463]). The pertinent part of said section reads as follows:

"Whenever it shall be necessary for the public health to locate, establish and construct a county drain, then a petition therefor may be filed with the county drain commissioner signed by 2 or more public corporations which will be subject to assessments to pay the cost thereof."

If the legislature had intended to require the signatures of all public corporations to be assessed it would have said so. A public health question is involved. The legislature had a right to indicate what type of drain petition could institute the procedure. We find no requirement in law that would require all municipalities to join in the original petition.

in order to start the action. As long as they have had notice and an opportunity to be heard prior to assessment, legal requirements have been met. We believe they are met under this statute.

Another question raised is whether or not the county of Oakland had a right to assume the apportionment on account of the zoo and golf course properties, which are owned and operated by the city of Detroit and located in the cities of Huntington Woods and Royal Oak.

*City of Detroit* v. *Oakland County,* 353 Mich 609, held that both said zoo and golf course are owned by the city of Detroit and used for governmental purposes, and, therefore, said properties are not subject to a special assessment for drains.

Section 468, chapter 20 of the drain code (CLS 1956, § 280.468 [Stat Ann Spec 1956 Drain Code Supp § 11.1468]), provides, in part, as follows:

"Nothing herein contained shall prohibit the county from assuming any additional cost of said drain if 2/3 of the members-elect of the county board of supervisors shall vote in favor thereof."

Counties are authorized by statute to contribute to the operation of public parks and public zoological gardens.* The zoo and golf course are within the terms of the definition of a public park. A large portion of the population of Oakland county either use or have available for their use if they desire both the golf course and the park. The operation of these has been held a governmental purpose. The legislature was within its rights in providing the means by which the county might assume such additional cost.

A question has been raised as to whether or not assessments can be made against the city of Troy

---

* See CL 1948, §§ 318.51–318.54 (Stat Ann 1958 Rev §§ 13.1031–13.1034).—REPORTER.

in view of the fact that only a small portion of the city lies within the drainage area of the Twelve Towns Relief Drains.

The city of Troy as a unit is responsible for the health of the entire city and each part thereof. Contaminations and diseases do not respect lot lines or even city border lines.

Mr. Justice LONG in *Davock* v. *Moore,* 105 Mich 120, 132, 133 (28 LRA 783) makes the following statement:

"The care of the public health is a police power. The several States of the Union possess a general police power, by which persons and property are subjected to all kinds of restraints and burdens in order to secure the general health, comfort, and prosperity of the State. Whatever differences of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health, and property of the citizens, and to the preservation of good order and public morals. They belong emphatically to that class of objects which demand the application of the maxim, '*Salus populi suprema lex;*' and they are to be attained and provided for by such appropriate means as the legislature may devise."

We believe the whole city is concerned with the health of its citizens and that the apportionment of these assessments to the entire city is proper under the circumstances.

The legislature had full power to require a county to pay from its general fund any deficiency accruing on drainage bonds. In the proper exercise of its plenary power, the legislature directed one unit of county government to use its funds in the aid of another unit. It does not operate as a grant of credit in violation of article 10, § 12, of the Constitution of

1908. *Oakland County Drain Commissioner* v. *City of Royal Oak,* 306 Mich 124.

The final question raised is: May the drainage board after the entry of its final order of determination change the route of the proposed drain without holding further hearings and without entering a new final order of determination?

While the letter of the drain code was not followed in this respect, it would appear from the findings of fact made by the lower court that the township of Southfield and the city of Troy were unable to produce testimony that would convince the lower court that they had in any way been prejudiced or damaged. It would appear, therefore, that nothing could be accomplished by any new hearing. Therefore, we find no basis exists to hold that a rehearing should be held under the circumstances.

The matter will be referred back to the circuit court for the entry of a decree in accordance with this opinion. A public question and public corporations being involved, no costs are allowed.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.