CITY OF HUNTINGTON WOODS v CITY OF DETROIT

Docket No. 276021. Submitted July 10, 2008, at Detroit. Decided July 15, 2008, at 9:00 a.m. Leave to appeal sought.

The city of Huntington Woods and others brought an action in the Oakland Circuit Court against the city of Detroit, seeking declaratory and injunctive relief with regard to the defendant's attempts to sell the Rackham Golf Course, a public golf course owned by the defendant and situated in Huntington Woods. The land on which the golf course now sits was deeded to Horace and Mary Rackham by the Baker Land Company (the Baker deed). The conveyance was in fee simple and provided that "[i]t is part of the consideration hereof that the land transferred by this deed shall be used only as a public park or golf course or for other similar purpose." After the Rackhams constructed a golf course and a clubhouse, they deeded the property to the defendant (the Rackham deed). That deed included several conditions and a reversionary clause. It required the premises to be perpetually maintained "exclusively as a public golf course for the use of the public" and reserved to the Rackhams the "right to restrict or limit the use of the premises" "in such manner as to them shall seem proper in order to carry out and fulfill the purpose for which said course was built and improvements made." It further provided that "if any of the foregoing conditions shall be broken then the estate hereby granted shall be forfeited and the said premises shall revert to [the Rackhams and their heirs] who shall thereupon have the right to re-enter and re-possess the same." The court, Rae Lee Chabot, J., granted summary disposition in favor of the plaintiffs. The court held that the Rackham deed contains a clear restriction that the property is to be used as a public golf course or it reverts to the Rackham heirs. It further held that the defendant may transfer its interest in the property once it has acquired all the necessary waivers so as to eliminate any possibility of reverter. The court also held that the Baker deed prohibits the use of the property for any purpose other than those specifically set forth therein. The court concluded that the absence of a reverter clause in the Baker deed does not change the clear intention stated therein that the property be used only as a public park or golf course. The

defendant appealed, and the plaintiffs cross-appealed from the order granting summary disposition in favor of the plaintiffs.

The Court of Appeals *held*:

1. The primary issue asserted by the plaintiffs regarding the right or authority of the defendant to sell the property, and pursuant to what terms, was not hypothetical. The trial court was not precluded from ruling whether the sale was authorized and under what conditions merely because a sale had not yet been effectuated. The issue was ripe for determination.

2. The plaintiffs demonstrated a concrete and particularized harm that was imminent and different from that of the general public. The plaintiffs have standing to bring this action.

3. The Rackham deed conveyed a fee simple subject to a condition subsequent, not an easement, to the defendant.

4. The defendant is precluded from conveying the subject property while the reversionary rights of the Rackham heirs remain intact. The possibility of reverter may not be assigned before breach of a condition subsequent. The agreement delineated in the Rackham deed requiring maintenance of the property as a public golf course for use by the public qualified as one invoking a public-welfare purpose and is exempt under MCL 554.381 from being an unlawful restraint on alienation.

5. The defendant may sell the property after securing waivers from those retaining reversionary rights to the property. However, the defendant may only sell the property to another public entity and not a private entity, despite the retention of any conditions or assurances that the golf course would remain a golf course open to the public. The trial court failed to recognize that the property could only be sold to a public entity.

6. The trial court properly determined that the language in the Baker deed restricting use of the property to a public park or golf course or for other similar purpose, despite the absence of a reversionary clause or other conditional language, comprises a restrictive covenant that runs with the land and precludes the Rackhams, the defendant, and future owners from using the land for any purpose other than as a public golf course.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. DECLARATORY JUDGMENTS — ACTUAL CONTROVERSIES.

The existence of an actual controversy is a condition precedent to invocation of declaratory relief; this requirement prevents a court from deciding hypothetical issues; the purpose of declaratory relief

is to provide litigants with court access in order to preliminarily determine their rights; an actual controversy is deemed to exist in circumstances where declaratory relief is necessary in order to guide or direct future conduct before actual injuries or losses have occurred.

2. PUBLIC LANDS — PARKS — APPROPRIATION FOR OTHER USES — ACTIONS — STANDING.

Owners of property abutting a public park or having an unobstructed view thereof may sustain injury different from that of the general public where the park is appropriated to other uses and such owners have a special right to a cause of action to insist that it not be appropriated to other uses.

3. DEEDS — FEE SIMPLE DETERMINABLE — FEE SIMPLE SUBJECT TO A CONDITION SUBSEQUENT.

A fee simple determinable is a fee subject to special limitation that expires automatically on the happening or nonhappening of a specified event; a fee simple subject to a condition subsequent is subject to a power by the grantor to terminate the estate on the happening of a specified event, such as a breach of a condition; a fee simple determinable is a limited grant while a fee simple subject to a condition subsequent is an absolute grant to which a condition is applied.

*Shifman & Carlson, P.C.* (by *John A. Carlson* and *Burton R. Shifman*), for the plaintiffs.

*John E. Johnson, Jr.*, Corporation Counsel, and *Jeffrey S. Jones*, Senior Assistant Corporation Counsel, for the defendant.

Before: METER, P.J., and TALBOT and SERVITTO, JJ.

TALBOT, J. Defendant, city of Detroit, appeals as of right the order granting plaintiffs', city of Huntington Woods, Bonnie Sheehy Nielsen, Kellie Treppa, and John Steinberg, motion for summary disposition and request for a declaratory judgment pertaining to the sale of the Rackham Golf Course.[1] Plaintiffs cross-appeal certain

---

[1] In addition, the trial court denied the motion of Premium Golf, LLC, which is not a party to this appeal, to intervene in the action.

parts of the trial court's order. We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTUAL HISTORY AND BACKGROUND

This lawsuit involves a dispute concerning the authority of defendant to sell or convey its interest in the Rackham Golf Course, which comprises approximately 121 acres and is situated in plaintiff city of Huntington Woods. Originally, this parcel was part of a recorded plat identified as the "Bronx Subdivision." In 1922, on petition by the Baker Land Company, a portion of the land platted within the Bronx Subdivision property, which now comprises the Rackham Golf Course, was removed from the plat by vacation of that part of the plat by order of the Oakland Circuit Court. Approximately six months after entry of the order removing this portion of the property from the subdivision plat, the owner, the Baker Land Company, deeded the property to Horace Rackham and his wife, Mary Rackham (hereinafter referred to as the Baker deed). The remaining portion of the Bronx Subdivision was developed as residential property. At the time of this conveyance, it appears there were no particular improvements or development with regard to the property. There is no dispute that this conveyance was in fee simple and contained the following relevant provision: "It is part of the consideration hereof that the land transferred by this deed shall be used only as a public park or golf course or for other similar purpose." The Rackhams constructed an 18-hole golf course, with a clubhouse, on the property.

In 1924, the Rackhams deeded the improved property, containing the golf course and the clubhouse, to defendant (hereinafter referred to as the Rackham deed). The Rackham deed included several conditions,

along with a reversionary clause. Specifically, the Rackham deed provided, in relevant part:

> Provided always, however, that these presents are upon the several express conditions and limitations following, to-wit: FIRST: That the said premises shall be perpetually maintained by the said party of the second part exclusively as a public golf course for the use of the public under reasonable rules, regulations and charges to be established by second party. SECOND: That the course and the turf thereon shall be maintained at a standard condition at least equal to its condition at the time of the acceptance of this grant. THIRD: That beverages containing any alcoholic content whatever shall not be brought upon, kept, used or sold on said premises by any party hereto or by any person or persons, firm or corporation. FOURTH: First parties hereby reserve the right to restrict or limit the use of the premises hereby conveyed in such manner as to them shall seem proper in order to carry out and fulfill the purpose for which said course was built and improvements made. FIFTH: That if any of the foregoing conditions shall be broken then the estate hereby granted shall be forfeited and the said premises shall revert to the parties of the first part and their heirs and assigns who shall thereupon have the right to re-enter and re-possess the same.

The parties acknowledge that since this conveyance, in 1924, defendant has continuously operated and maintained the property as a public golf course.

## II. PROPERTY BIDS

In 2006, the Detroit Planning and Development Department received an unsolicited inquiry from Premium Golf, LLC, seeking to acquire defendant's interest in the Rackham Golf Course. Defendant communicated this offer to the Detroit City Council, indicating:

> We are in receipt of a request from Premium Golf LLC, a Michigan Limited Liability Company, to purchase the . . . property for the amount of $5,000,000. Premium Golf LLC

has offered to purchase the property and continue to use it as a golf course. Given the City's financial condition and in an effort to meet our land sales projections we are recommending this sale.

Concerned that maximum value be obtained by defendant for the property, an additional term of the proposed agreement indicated that defendant would receive substantial remuneration beyond the referenced sale price if Premium Golf, LLC, were successful in removing the use conditions and was able to develop the property for residential construction.[2] In response to questions raised by the city council, defendant's planning and development department indicated:

The City received an unsolicited offer from Premium Golf, LLC to purchase Rackham Golf Course with the deed restriction in tact [sic] with the immediate plan to continue to operate it as a golf course. Premium Golf is in negotiations with the Rackham heirs to buy out the deed restriction.

While the offer from Premium Golf, LLC, was under consideration, plaintiff city of Huntington Woods also submitted an unsolicited bid to purchase the property from defendant for the sum of $5,500,000 contingent on the approval of a bond issue by voters.

After this lawsuit was initiated, defendant's planning and development department authorized the issuance of a request for proposals (hereinafter referred to as the RFP), which basically sought bids for the acquisition of the golf-course property. The RFP provided, in pertinent part:

The intent of this Request for Proposal is to retain an experienced and qualified Developer who has the potential

---

[2] Defendant was to receive $10,000 for each single-family detached lot; $8,000 for each cluster-style home; and $5,000 for each multiple-family dwelling unit, defined as including eight or more units in each building.

and financial capacity to purchase the Rackham Golf Course for the existing use or demonstrate the ability to obtain re-zoning for other uses. . . .

\* \* \*

The City of Detroit has established a minimum bid price of $6,250,000 for sale of the Rackham Golf Course . . . . In the event that the respondent is able to remove the deed restriction, the City of Detroit will require a minimum of $5,000,000 in additional compensation.

\* \* \*

There is an existing deed restriction that the property be maintained as a public golf course.

Shortly thereafter, plaintiff city of Huntington Woods, responding to defendant's RFP, authorized the submission of an offer to purchase the property, with appurtenances, for $6.25 million.

### III. LOWER-COURT PROCEEDINGS

Plaintiffs filed their initial complaint on June 20, 2006, seeking a declaratory judgment. Shortly thereafter, plaintiffs filed an amended complaint for a declaratory judgment and an injunction. Plaintiffs alleged that defendant held the golf course in public trust subject to restrictions regarding its use. Plaintiffs argued that defendant's attempt to sell the property to a private entity was contrary to the deed restrictions and, therefore, precluded. Plaintiffs city of Huntington Woods, Nielsen, and Treppa further argued that as subsequent owners of property in the Bronx Subdivision, they have contractual rights "which initially accrued to the Baker Land Company to enforce the restrictions in the [Baker] deed to the Rackhams." Plaintiff Treppa contended that as an owner of property abutting the golf

course, she enjoyed "special rights in the maintenance of the Rackham Golf Course and the status quo may not be changed without their concurrence." Plaintiffs further alleged a right to enforce the Baker deed and Rackham deed restrictions as third-party beneficiaries.[3] Plaintiffs sought a determination from the trial court that: (A) restrictions on use of the property contained in the Baker and Rackham deeds "remain valid and enforceable and preclude the sale and/or development . . . of that property for residential housing"; (B) a determination that defendant cannot sell the property to a private entity because it is a "public golf course"; (C) the property at issue cannot be sold or developed for any purpose other than that specified in the Rackham deed "without the concurrence of property owners abutting and having an unobstructed view thereof" and the property owners of the Bronx subdivision; and (D) the court enjoin the sale of the property. Defendant filed an answer and asserted as relevant affirmatives defenses:

1. Plaintiff [sic] has failed to state a claim upon which relief can be granted.

2. There is no justiciable case or controversy before the Court.

3. Plaintiffs lack standing to sue.

\* \* \*

4. Plaintiffs have failed to join indispensable parties [the Rackham heirs].

Plaintiffs filed a motion for summary disposition, pursuant to MCR 2.116(C)(9) and (10), asserting that defendant had no interest it could sell in the golf course because it served only as a trustee that maintains the

[3] Plaintiff Steinberg owns a home in the Huntington Woods subdivision that does not abut the golf course.

property in trust for use only by the public as a public golf course. Plaintiffs asserted that the language of the Rackham deed was restrictive, because it required defendant to maintain the property " 'as a public golf course for the use of the public.' " Consequently, plaintiffs asserted that defendant has only an easement interest and not title to the property and that any attempt to sell it to a private entity would be a breach of the Rackham deed restrictions. Plaintiffs also asserted that they were proper parties to bring the action because their properties abutted the golf course and had unobstructed views or they could demonstrate their reliance on maintenance of the property as a golf course in purchasing or improving their residences. Plaintiffs contended that the language of the Baker deed comprised a restriction on the use of the land. Because plaintiffs are property owners in the chain of title from the original grantor of the Baker deed, they asserted that they are entitled to enforce those restrictions.

Defendant responded, asserting the lack of a justiciable controversy. Defendant observed that the city council had rejected a resolution approving the purchase of the golf course by Premium Golf, LLC. Acknowledging that other offers or bids were pending and being reviewed by the city council, defendant asserted that plaintiffs' claims for declaratory relief were merely hypothetical and that no appreciable harm could be demonstrated to have resulted from defendant's contemplation of offers to purchase the property. Defendant argued that it had operated and maintained the property for 80 years as a golf course and that there has been no breach of duty or provision pertaining to the conveyance as delineated in the Rackham deed. As a result, defendant sought the grant of summary disposition in its favor, pursuant to MCR 2.116(I)(2), asserting that the claims of plaintiffs presented no issue "ripe for

judicial review" and, therefore, dismissal was required for lack of jurisdiction. In addition, defendant argued that there was no prohibition against conveying the property subject to the conditions delineated in the Rackham deed. While defendant asserted that the Rackham heirs could release their reversionary rights, defendant additionally contended that such an event was merely hypothetical and, therefore, review by the trial court was precluded. Defendant argued that the provisions in the Baker deed did not comprise a restrictive covenant, which runs with the land, but were merely a statement of purpose that is not enforceable by the grantor.

Following a hearing, the trial court granted plaintiffs' motion for summary disposition, pursuant to MCR 2.116(C)(10), ruling, in relevant part:

> The deed from the Rackhams to the city of Detroit contains a clear and undeniable restriction that the property is to be used as a public golf course, or the property may revert to the Rackham heirs. This does not, however, prohibit the city of Detroit from ever selling the property. . . .
>
> Insofar as Defendant indicates it may transfer the property subject to the deed restrictions, it is partially correct. Defendant may transfer its interest in the property once it has acquired all the necessary waivers so as to eliminate any possibility of reverter. . . .
>
> As to Plaintiff's [sic] contention that the deed from the Baker Land Company to the Rackhams prohibits the use of the property for any purpose other than those specifically set forth therein, this is also granted. . . .
>
> It cannot be ignored that the property was originally platted for development and prior to the transfer to the Rackhams the plat was vacated by an action in this Court. The facts and record indicate the intention of Baker Land Company was that the property be used only as a public

park or golf course. The absence of a reverter clause does not change the very clear intention as set forth in the deed.

The trial court denied plaintiffs' request for summary disposition pursuant to MCR 2.116(C)(9), indicating the "fail[ure] to address in the supporting brief how the pleadings are defective or insufficient . . . ." On the basis of its determination of the propriety of summary disposition in favor of plaintiffs pursuant to MCR 2.116(C)(10), the trial court denied defendant's request for summary disposition pursuant to MCR 2.116(I)(2). An order memorializing the trial court's ruling was entered on October 25, 2006.

IV. ISSUES

On appeal, defendant challenges the trial court's ruling, asserting that plaintiffs' claim is not justiciable because a sale of the property is not imminent. Defendant further contends that plaintiffs lack standing because they have failed to demonstrate any individualized or particularized harm different from that of the general public. Defendant contends that the trial court erred in its determination that defendant cannot convey the property, even subject to the deed restrictions, without first obtaining waivers from the Rackham heirs of their reversionary interest. Finally, defendant argues that the trial court's ruling that the Baker deed contained a restrictive covenant running with the land and enforceable by the grantor was erroneous. Instead, defendant asserts that the Baker deed merely includes a statement of purpose because the deed lacks a reverter clause and was between private parties and, thus, cannot be construed as a dedication to public use.

On cross-appeal, plaintiffs argue that the trial court's ruling, while favorable, did not go far enough. Plaintiffs contend that the trial court erred in its determination

that defendant had a right to convey the property because defendant is merely a trustee with an easement interest. In addition, plaintiffs argue that defendant must obtain not only the approval of the Rackham heirs but also the consent of the abutting property owners in order to convey the property and that such a conveyance can only be to another public entity so as not to violate the Rackham deed restrictions.

## V. STANDARD OF REVIEW

This Court reviews de novo a trial court's grant or denial of a motion for summary disposition pursuant to MCR 2.116(C)(10). *Bragan v Symanzik,* 263 Mich App 324, 327-328; 687 NW2d 881 (2004). A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. "In reviewing a motion for summary disposition brought under MCR 2.116 (C)(10), we consider the affidavits, pleadings, depositions, admissions, or any other documentary evidence submitted in [the] light most favorable to the nonmoving party to decide whether a genuine issue of material fact exists." *Singer v American States Ins,* 245 Mich App 370, 374; 631 NW2d 34 (2001). Summary disposition is appropriate only if there are no genuine issues of material fact and "the moving party is entitled to judgment as a matter of law." *MacDonald v PKT, Inc,* 464 Mich 322, 332; 628 NW2d 33 (2001). In addition, whether a party has standing is a question of law, which we review de novo. *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co,* 471 Mich 608, 612; 684 NW2d 800 (2004). Questions pertaining to justiciability and ripeness comprise constitutional issues, which are also reviewed de novo. *Michigan Chiropractic Council v Comm'r of the Office of Financial & Ins Services,* 475 Mich 363, 369; 716 NW2d 561 (2006).

### VI. CONSTITUTIONAL ISSUES

"In seeking to make certain that the judiciary does not usurp the power of coordinate branches of government, and exercises only 'judicial power,' both this Court and the federal courts have developed justiciability doctrines to ensure that cases before the courts are appropriate for judicial action." *Id.* at 370.

Although the term "judicial power" is not defined in our constitution,

" 'judicial power' has traditionally been defined by a combination of considerations: the existence of a real dispute, or case or controversy; the avoidance of deciding hypothetical questions; the plaintiff who has suffered real harm; the existence of genuinely adverse parties; the sufficient ripeness or maturity of a case; the eschewing of cases that are moot at any stage of their litigation; the ability to issue proper forms of effective relief to a party; the avoidance of political questions or other non-justiciable controversies; the avoidance of unnecessary constitutional issues; and the emphasis upon proscriptive as opposed to prescriptive decision making." [*Michigan Citizens for Water Conservation v Nestlé Waters North America Inc*, 479 Mich 280, 293; 737 NW2d 447 (2007), quoting *Nat'l Wildlife, supra* at 614-615.]

Our Supreme Court has further "distill[ed] this litany of considerations arising from the proper exercise of the 'judicial power,' and . . . determined that 'the most critical element' is 'its requirement of a genuine case or controversy between the parties, one in which there is a real, not a hypothetical, dispute.' " *Michigan Citizens for Water Conservation, supra* at 293, quoting *Nat'l Wildlife, supra* at 615.

The doctrine of ripeness is designed to prevent "the adjudication of hypothetical or contingent claims before an actual injury has been sustained. A claim is not ripe if it rests upon ' "contingent future events that may not

occur as anticipated, or indeed may not occur at all." ' " *Michigan Chiropractic Council, supra* at 371 n 14 (citations omitted). Hence, when considering the issue of ripeness, the timing of the action is the primary focus of concern. Defendant contends that plaintiffs' complaint was not ripe for consideration by the trial court because defendant had neither sold its interest in the golf course nor violated any restrictions contained in the Rackham deed regarding use of the property as a public golf course.

"The existence of an actual controversy is a condition precedent to invocation of declaratory relief and this requirement prevents a court from deciding hypothetical issues." *Detroit v Michigan,* 262 Mich App 542, 550; 686 NW2d 514 (2004) (internal quotation marks and citation omitted). However, it is the purpose and intent behind the grant of declaratory relief to provide litigants with court access in order to "preliminarily determine their rights." *Id.* at 551; MCR 2.605(A)(1). An actual controversy is deemed to exist in circumstances where declaratory relief is necessary in order to guide or direct future conduct. In such situations, courts are " 'not precluded from reaching issues before actual injuries or losses have occurred.' " *Detroit, supra* at 551 (citation omitted).

Defendant is correct in its assertion that, when this litigation was initiated, there had been no violation of the restrictive covenants contained in the Rackham deed and the property had not been sold. However, even though a sale had not been effectuated, it was obvious that defendant was not only seriously considering sale of the property but had begun, through the issuance of a formal RFP, to solicit bids. Hence, the primary issue asserted by plaintiffs regarding the right or authority of defendant to sell the property, and pursuant

to what terms, comprised an issue that was not hypothetical. "[D]eclaratory relief is designed to resolve questions like the one at issue before the parties change their positions or expend money futilely." *Id.* at 551. As a result, plaintiffs' request for declaratory relief properly seeks a determination regarding defendant's authority to sell the property. The trial court was not precluded from ruling whether the sale was authorized and under what conditions merely because a sale had not yet been effectuated.

Defendant further asserts that plaintiffs lacked standing to pursue this matter because they could not demonstrate a sufficient injury, separate and distinct from that of the general public.

> Standing ensures that a genuine case or controversy is before the court. It requires a demonstration that the plaintiff's substantial interest will be detrimentally affected in a manner different from the citizenry at large. To successfully allege standing, a plaintiff must prove three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. [*Michigan Citizens for Water Conservation, supra* at 294-295, quoting *Nat'l Wildlife, supra* at 628-629 (additional citations and internal quotation marks omitted).]

Contrary to defendant's assertion, the aforementioned plaintiffs have demonstrated a "concrete and particularized" harm that was "imminent." As we have noted, defendant was actively pursuing a sale of the golf course. Plaintiffs, as owners of property abutting the

golf course or having an unobstructed view of the golf course, could assert an injury different from that of the general public, which was merely concerned with access to the property. Instead, plaintiffs' interests extended to the enjoyment and beneficial use of their own property, which is distinct from the potential for harm to the general public. As our Supreme Court recognized in *Baldwin Manor, Inc v Birmingham,* 341 Mich 423, 435; 67 NW2d 812 (1954): " 'If the facts warranted the conclusion . . . that the gift . . . has been subverted to a use foreign to that of a public park, there is no doubt that complainant as an abutting property owner might seek the aid of a court of equity.' " (Citation omitted.) In addition, the Court quoted with approval 64 CJS, Municipal Corporations, § 1823, pp 310-311,[4] regarding the rights of property owners in such situations:

> "[S]uch right of action where he does sustain a special injury; and ordinarily the owners of property abutting on a park or square have such a special right to insist that it shall not be appropriated to other uses.
>
> "The owner of a lot in the immediate vicinity of a park, although not abutting thereon, but who is an adjacent proprietor in that he has an unobstructed view from his property, may sustain such an injury by reason of its diversion to other uses as to give him a right of action to enjoin the diversion and abandonment by the city of the grounds as a public park." [*Baldwin Manor, supra* at 436.]

Defendant contends that *Baldwin* is inapplicable and factually distinguishable because there has been no diversion of use of the property as a golf course. However, we note that in the RFP soliciting bids, defendant has clearly indicated that "[t]he intent of this Request for Proposal is to retain an experienced and

---

[4] We note that the cited provision is now contained in 64 CJS, Municipal Corporations, § 1561, p 719.

qualified Developer who has the potential and financial capacity to purchase the Rackham Golf Course for the existing use *or demonstrate the ability to obtain rezoning for other uses.*" (Emphasis added.) Consequently, defendant's own solicitation of bids under these conditions precludes its assertion that the alleged harm is based solely on conjecture or is hypothetical in nature. In addition, the harm is "clearly traceable" to defendant's proposed action to sell the property and encourage its alternative development for residential purposes in order to secure additional remuneration. Finally, a decision favorable to plaintiffs would clearly redress the injury, thereby satisfying the technical requirements for establishing standing for these parties.

## VII. FEE SIMPLE vs. EASEMENT

Defendant asserts that the trial court erred in determining that defendant was precluded from transferring its interest in the Rackham Golf Course without first obtaining waivers from individuals with reversionary interests. Defendant contends that as long as it conveys the property subject to the deed restrictions there is no breach or abandonment sufficient to give rise to the reverter clause. In response and on cross-appeal, plaintiffs assert that defendant's interest in the property is merely an easement, which cannot be conveyed to a private entity such as Premium Golf, LLC. Rather, plaintiffs contend that the language of the deed requires the golf course be maintained by a public entity and that the trial court did not go far enough and should have required defendant to obtain the waivers or permission of abutting land owners for any conveyance.

Initially, we must determine and define the precise nature of the property interest conveyed to defendant by the Rackham deed.

An inquiry into the scope of the interest conferred by a deed such as that at issue here necessarily focuses on the deed's plain language, and is guided by the following principles:

(1) In construing a deed of conveyance[,] the first and fundamental inquiry must be the intent of the parties as expressed in the language thereof; (2) in arriving at the intent of parties as expressed in the instrument, consideration must be given to the whole [of the deed] and to each and every part of it; (3) no language in the instrument may be needlessly rejected as meaningless, but, if possible, all the language of a deed must be harmonized and construed so as to make all of it meaningful; (4) the only purpose of rules of construction of conveyances is to enable the court to reach the probable intent of the parties when it is not otherwise ascertainable.

These four principles stand for a relatively simple proposition: our objective in interpreting a deed is to give effect to the parties' intent as manifested in the language of the instrument. [*Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 370; 699 NW2d 272 (2005) (citations and internal quotation marks omitted).]

Our starting point in this analysis is the language of the Rackham deed, which provides that it does "grant, bargain, sell, remise, release, alien and confirm" to defendant "[f]orever, [a]ll that certain piece or parcel of land situate and being in the Township of Royal Oak, County of Oakland" as described by metes and bounds. The deed provides for specific "express conditions and limitations" regarding use of the property by defendant with rights of reversion "if any of the foregoing conditions shall be broken then the estate hereby granted shall be forfeited and the said premises shall revert to the parties of the first part and their heirs and assigns who shall thereupon have the right to re-enter and re-possess the same."

As with any instrument, a deed must be read as a whole in order to ascertain the grantor's intent. *Carmody-Lahti, supra* at 370. "[A] deed *granting* a right-of-way typically conveys an easement, whereas a deed granting *land itself* is more appropriately characterized as conveying a fee or some other estate[.]" *Id.* at 371 (emphasis in original). Notably the terms "easement" and "right-of-way" are not contained in the Rackham deed. Rather, the deed indicated that the conveyance was for a "certain piece or parcel of land . . . ." Therefore, on the basis of the plain and unambiguous language of the Rackham deed, we reject plaintiffs' assertion and find that a fee simple in the land was conveyed to defendant, rather than an easement. However, our inquiry does not stop with this determination and we must now ascertain what type of fee was conveyed.

The Rackham deed clearly and unambiguously delineates "express conditions and limitations" pertaining to use of the land conveyed to defendant. In addition, following a listing of those conditions, the deed affirmatively provides that the property "shall revert" upon the breach of "any of the foregoing conditions . . . ." A distinction exists between a fee subject to a condition subsequent and a fee simple determinable. Specifically,

> [a] "fee simple determinable" is a limited grant, while a "fee simple subject to a condition subsequent" is an absolute grant to which a condition is appended. A "fee simple determinable" is a fee subject to special limitation. It expires automatically on the happening or nonhappening of a specified event, while a fee simple subject to a condition subsequent is subject to a power in the grantor to terminate the estate on the happening of a specified event, such as a breach of a condition. [28 Am Jur 2d, Estates, § 164, p 191.]

The intent of the Rackhams to create a condition subsequent is clearly and definitively demonstrated by the language contained in the deed. *Clark v Grand Rapids,* 334 Mich 646, 655; 55 NW2d 137 (1952). Although "conditions subsequent are not favored in law," in this instance the presence of a reverter clause specifically requiring forfeiture upon breach of any of the delineated conditions requires us to find that the interest conveyed by the Rackham deed is a fee simple subject to a condition subsequent. *Id.* at 654; *Quinn v Pere Marquette R Co,* 256 Mich 143, 152; 239 NW 376 (1931).

Guided by our determination regarding the interest conveyed by the Rackham deed, we are then able to address defendant's assertion that the trial court erred in requiring it to obtain waivers from those individuals retaining reversionary rights in the property before any conveyance. Defendant contends that it may convey the property to any entity as long as the restrictive conditions pertaining to maintenance of the property as a public golf course are preserved. Although recognizing that an abutting property owner "who proves special injury caused by an actual diversion of the use may obtain an injunction against the diversion or misuse," defendant asserts that abutting property owners cannot force or require that it "obtain a relinquishment of the use restriction . . . in order to sell [the] land."

Defendant is partially correct in its assertion. The trial court's imposition of a requirement that defendant first obtain waivers from those with reversionary interests is not based on the inherent rights of abutting property owners. Rather, the trial court's requirement that defendant can sell its interest in the golf course "only after the surrender or conveyance of the rights and interest by appropriate waivers, releases, deeds or condemnation proceedings of those having possible

rights as reversioners" is based on basic principles regarding estates in real property and caselaw. Specifically, our Supreme Court has repeatedly determined that "[i]f the estate was a fee upon condition subsequent, plaintiff could not enforce the reverter, because the possibility of reverter cannot be assigned before breach of condition." *Quinn, supra* at 152, citing *Halpin v Rural Agricultural School Dist,* 224 Mich 308, 313; 194 NW 1005 (1923). As a result, and in accordance with the trial court's determination, defendant is precluded from conveying the subject property while the reversionary rights of the Rackham heirs remain intact.

This restriction on a conveyance raises an issue regarding prohibitions against restraints on alienation of property. We determine that this is not a viable issue in this case because MCL 554.381 provides, "No statutory or common law rule of this state against perpetuities or restraint of alienation shall hereafter invalidate any gift, grant, devise or bequest, in trust or otherwise, for public welfare purposes." See also MCL 123.871. Because the agreement delineated in the Rackham deed requiring maintenance of the property as a public golf course for use by the public clearly qualifies as one invoking a public-welfare purpose, it is statutorily exempt as an unlawful restraint on alienation.

Although the trial court ruled that defendant had a right to sell the property, subject to removal of the reversioners' rights, it did not further limit defendant's right to convey the property on the basis of the status of the purchaser as either a public or a private entity. Defendant contends that its selection of a purchaser is not restricted to only another public entity, while plaintiffs assert the language of the deed does limit the nature of the entity qualified to serve as a potential buyer.

The Michigan Constitution provides: "Any city or village may acquire, own, establish and maintain, within or without its corporate limits, parks, boulevards, cemeteries, hospitals and all works that involve the public health or safety." Const 1963, art 7, § 23. MCL 117.4e(3) allows municipalities to provide in their charters "[f]or the maintenance, development, operation, of its property and upon the discontinuance thereof to lease, sell or dispose of the same subject to any restrictions placed thereupon by law[.]" Similarly, defendant's City Code contains provisions delineating the authority and procedure for the sale of "surplus real property and property used for public purposes." Detroit City Code, Article VIII, § 14-8-1 through § 14-8-11. This right to sell is consistent with our determination that a fee interest was conveyed to defendant; however, we must reconcile defendant's statutory right to sell property with any restrictions of conveyance contained in the Rackham deed.

Plaintiffs contend the language of the Rackham deed precludes the conveyance of this property to a private entity. Specifically, plaintiffs argue that the wording unequivocally requires "[t]hat the said premises shall be perpetually maintained by the said party of the second part exclusively as a *public golf course* for the *use of the public* . . . ." (Emphasis added.) Plaintiffs assert that the use of the term "public" twice within this sentence or provision is indicative of the grantor's intent that the property must remain publicly owned, thereby precluding any conveyance to a private entity. This reading of the deed language is consistent with the principle that " 'all the language of a deed must be harmonized and construed so as to make all of it meaningful . . . .' " *Carmody-Lahti, supra* at 372 (citation omitted). Use of the term "public" before golf course indicates nonprivate ownership, with the further

limitation that the property also is designated specifically "for the use of the public . . . ."

The language of the deed clearly evokes the intent of the Rackhams, as grantors, to restrict the use of the subject property. Specifically, the deed provides, in relevant part:

> [S]aid premises shall be perpetually maintained by said party of the second part exclusively as a public golf course for the use of the public under reasonable rules, regulations and charges to be established by second party. . . . First parties hereby reserve the right to restrict or limit the use of the premises hereby conveyed in such manner as to them shall seem proper in order to carry out and fulfill the purpose for which said *course* was built and improvements made. [Emphasis added.]

This is further shown by the retention of a right of reverter and is consistent with our Supreme Court's recognition that the Rackham " 'golf course was opened for the use of the public in August, 1924, being dedicated to the general public by the city of Detroit and operated as a governmental function supported by tax funds appropriated therefor and same has been used continuously since August, 1924, for public purposes.' " *Detroit v Oakland Co,* 353 Mich 609, 616; 92 NW2d 47 (1958), quoting a stipulation by the parties.

As acknowledged by the *Baldwin* Court, "[t]he right of a municipality to alter the status and use of property conveyed to and accepted by it for a specific purpose" has frequently been the subject of dispute. *Baldwin Manor, supra* at 429. As noted by the Court:

> A distinction is to be made between cases where a public square is dedicated without restriction and cases where the dedication is restricted to a particular purpose. In the former case, any reasonable public use may be made of the

square, but in the latter, it must be devoted to the particular purpose indicated by the dedicator. [*Id.* at 430.]

In addition, "dedications made by individuals . . . are construed strictly according to the terms of the grant . . . ." *Id.* Quoting with approval 26 CJS, Dedication, § 65, pp 154-155, the *Baldwin* Court noted:

> "[I]f a dedication is made for a specific or defined purpose, neither the legislature, a municipality or its successor, nor the general public has any power to use the property for any other purpose than the one designated, whether such use be public or private, and whether the dedication is a common-law or a statutory dedication; and this rule is not affected by the fact that the changed use may be advantageous to the public." [*Baldwin, supra* at 430-431.]

The only recognized exception to this rule is " 'under the right of eminent domain.' " *Id.* at 431. Given the unambiguous language used and the clearly stated intent of the grantors, we conclude that the Rackham deed contains an express covenant precluding the use of the subject property for any purpose other than a public golf course. Consequently, although defendant may sell the property, the trial court correctly indicated that it must first secure waivers from those retaining reversionary rights to the property. However, the trial court failed to recognize that additional restrictions requiring the golf course to remain *public* necessitated a further limitation on the type of entities to which defendant might convey the property. As a result, we determine that defendant may only sell the subject property to another public entity and not to a private entity, despite the retention of any conditions or assurances that the property would remain a golf course open to the public.

Finally, defendant and plaintiffs dispute both the meaning and effect of the language in the Baker deed regarding use of the land. Specifically, plaintiffs contend

the wording, "It is part of the consideration hereof that the land transferred by this deed shall be used only as a public park or golf course or for other similar purpose," comprises a restrictive covenant intended to run with the land. In contrast, defendant asserts that the language is merely a statement of purpose. Our focus is on "the intent of the parties as manifested in the plain language of the deed at issue . . . ." *Carmody-Lahti, supra* at 375.

The Baker deed specifically indicates that it is a conveyance of land "in Fee Simple." However, the instrument lacks a reverter clause or any words indicating the referenced provision pertaining to use of the property, which identifies it as a "condition." "The absence of a reverter clause is ordinarily controlling against construction of a provision as a condition." *Clark, supra* at 653. Typically, "where there is no reverter clause [in a deed], a statement of use is merely a declaration of the purpose of conveyance, without effect to limit the grant." *Quinn, supra* at 151. Defendant contends that successors in interest are not bound by the statement of intent, citing *Briggs v Grand Rapids,* 261 Mich 11, 14; 245 NW 555 (1932), which held that "[t]here was no obligation on the part of the city to maintain the park in perpetuity. . . . '[W]here there is no reverter clause, a statement of use is merely a declaration of the purpose of conveyance, without effect to limit the grant.' " (Citation omitted.) However, we note that *Briggs* is factually distinguishable because the property at issue was purchased for valuable consideration by the city and is not "a case where property was donated or dedicated for park purposes . . . ." *Id.*

When ruling on the effect of the Baker deed, the trial court stated, in relevant part:

> [T]he facts in the case at bar indicate the language was intended to serve as a restriction and not merely, quote, "a declaration of the purpose of conveyance," unquote, as in the *Briggs* case.

> It cannot be ignored that the property was originally platted for development and prior to the transfer to the Rackhams the plat was vacated by an action in this Court. The facts and records indicate the intention of Baker Land Company was that the property be used only as a public park or golf course. The absence of a reverter clause does not change the very clear intention as set forth in the deed.

Defendant contends that the trial court erred by determining that the restriction in the Baker deed to the Rackhams constituted a restrictive covenant that ran with the land rather than merely a statement of purpose. "A covenant is a contract created with the intention of enhancing the value of property and is a valuable property right." *Mable Cleary Trust v Edward-Marlah Muzyl Trust,* 262 Mich App 485, 491; 686 NW2d 770 (2004). Because such covenants are based in contract, the intent of the drafter is deemed controlling. *Stuart v Chawney,* 454 Mich 200, 210; 560 NW2d 336 (1997). We note as a recognized principle of construction regarding restrictive covenants that they are to be strictly construed against the party seeking their enforcement and that any doubts pertaining to their interpretation are to be resolved in favor of the free use of the property. *O'Connor v Resort Custom Builders, Inc,* 459 Mich 335, 341-342; 591 NW2d 216 (1999). Importantly, "when the intent of the parties is clearly ascertainable, courts must give effect to the instrument as a whole." *Village of Hickory Pointe Homeowners Ass'n v Smyk,* 262 Mich App 512, 515-516; 686 NW2d 506 (2004).

Relying on prior rulings of our Supreme Court, this Court has previously determined that restrictive covenants are to be

> construed in connection with the surrounding circumstances, which the parties are supposed to have had in mind at the time they made it, the location and character of the entire tract of land, the purpose of the restriction,

whether it was for the sole benefit of the grantor or for the benefit of the grantee and subsequent purchasers, and whether it was in pursuance of a general building plan for the development and improvement of the property. [*Webb v Smith (After Remand),* 204 Mich App 564, 570; 516 NW2d 124 (1994), quoting *Brown v Hojnacki,* 270 Mich 557, 560-561; 259 NW 152 (1935) (additional citations and internal quotation marks omitted).]

In ascertaining whether restrictive covenants run with the land, our Supreme Court has indicated:

> The test as to whether a covenant runs with the land or is merely personal, is whether the covenant concerns the thing granted and the occupation or enjoyment of it, or is a collateral and personal covenant not immediately concerning the thing granted. If a covenant concerns the land and the enjoyment of it, its benefit or obligation passes with the ownership, but to have that effect the covenant must respect the thing granted or demised and the act to be done or permitted must concern the land or the estate conveyed. In order that a covenant may run with the land its performance or non-performance must affect the nature, quality or value of the property demised, independent of collateral circumstances, or must affect the mode of enjoyment. [*Greenspan v Rehberg,* 56 Mich App 310, 321; 224 NW2d 67 (1974) (citations and internal quotation marks omitted).]

Applying the above definitions to the factual circumstances of this case, we concur with the trial court's determination that the language of the Baker deed, restricting use of the property to a "public park or golf course or for other similar purpose," despite the absence of a reversionary clause or other conditional language, comprises a restrictive covenant that runs with the land. As pointed out by the trial court, the property conveyed by the Baker deed; which ultimately became the Rackham Golf Course, was originally platted as part of a residential development. The Baker

Land Company specifically instituted legal proceedings to vacate that portion of the plat in order to develop the land as a public park or golf course. The language of the deed, coupled with the actions taken to distinguish this plat, expressly indicates the Baker Land Company's intention that the property not be developed for residential use, which would enhance the value of the surrounding area. Specifically, the restriction on use denoted in the Baker deed reflects the "pursu[it] of a general building plan for the development and improvement of the property." *Webb, supra* at 570 (citations and internal quotation marks omitted). Because we determine that the restriction concerns both the land conveyed and its future use, it comprises a covenant that runs with the land. As a result, the obligation to maintain the restricted use of the property passes to subsequent owners, *Greenspan, supra* at 321, and, thus, precludes the Rackhams, defendant, and future owners from using the land for any purpose other than as a public golf course.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.