*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEEPLECHASE OF NORTHVILLE OWNERS ASSOCIATION,

UNPUBLISHED
January 14, 2021

Plaintiff/Counterdefendant-Appellee,

v

No. 349434
Wayne Circuit Court
LC No. 17-006948-CH

MONIRUL TALUKDER and SHORMIN TALUKDER,

Defendants/Counterplaintiffs-Appellants.

Before: LETICA, P.J., and GLEICHER and O'BRIEN, JJ.

PER CURIAM.

Poets and painters have long been inspired by the serenity of fountains—the softly flowing water, the majesty of their form. But one person's nirvana can be another's nightmare. In modern subdivisions, homeowner's associations (HOAs) craft rules and regulations for outdoor aesthetics to maintain harmony among neighbors of differing tastes. When residents break the rules, they may be required to dismantle their peaceful oases.

Monirul and Shormin Talukder required preapproval to install any outdoor feature that could be seen from neighboring lots. They custom ordered an expensive, 9½-foot fountain as if preapproval was of no consequence, installed the fountain after Steeplechase of Northville Owners Association denied their application, and ignored Steeplechase's order to remove the fountain. Given the language of the HOA documents, the circuit court correctly upheld Steeplechase's decree. We affirm.

I

The Covenants and Restrictions of the Steeplechase of Northville subdivision were duly recorded in 2003. They provide for the appointment of a Covenants Committee, which "shall regulate the external design, signage, appearance, use and Upkeep of the Property . . . ." Approval of the Covenants Committee or the Board of Directors is required for "any addition, alteration, improvement or change of grade . . . which is Visible from Neighboring Property." Additions,

-1-

alterations, or improvements made without approval must be removed within 30 days of the Covenants Committee's notice.

On July 6, 2015, the Talukders sent an email to Tom Ewers, the subdivision developer's project manager and an at-large member of the Board of Directors, and copied two individuals at Kramer-Triad, the firm that managed the daily affairs of the Steeplechase HOA: Pat Kelly and Dean Williams. Contrary to the plain language of the recorded Covenants and Restrictions, which required approval for any change visible from neighboring lots, the Talukders' message indicated that approval was not required for their backyard landscaping plan. And the Talukders expected a response within 14 days. This was also contrary to the Covenants and Restrictions.

Section 9.1(d) provides for the Covenants Committee and Board of Directors to respond to applications for outdoor property changes as follows:

> Time for Response; Variances or Exceptions. The Covenants Committee shall act on all matters properly before it within [45] days after its receipt of a complete application in the form prescribed by the Covenants Committee; failure to do so within the stipulated time shall constitute an automatic referral to the Board of Directors at the written request of the applicant. Except when a request is being handled by the Covenants Committee, the Board of Directors shall be obligated to answer any written request for approval of a proposed structural addition, alteration or improvement within [15] days after the first Board of Directors meeting held following such referral to the Board, and failure to do so within the stipulated time shall constitute a consent by the Board of Directors to the proposed structural addition, alteration or improvement . . . .

The parties disputed whether the Talukders' application was "complete." The landscaping plans attached to the application did not reflect all anticipated changes. Although the Talukders noted that a fountain would be included in the landscape, they did not describe the size and style of the fountain. But the Talukders did provide a photograph of the fountain for Ewers's safekeeping.

In any event, it appears that the application was not forwarded to the Covenants Committee. The Talukders did not follow up and instead purchased the expensive, custom fountain. In May 2016, still without approval, the Talukders broke ground on their backyard renovation. This prompted the new HOA manager for Kramer-Triad, Cathy Campbell, to request a backyard landscaping plan from the Talukders. The Talukders complied but directed Campbell to review the fountain photograph on file at Ewers's office.

Finally, on June 26, 2016, the Talukders submitted a revised landscaping plan with photographs to a member of the Covenants Committee, Brian Nathan. The Talukders "request[ed] a deviation approval on the fountain," which was 9½ feet tall with several decorative lions incorporated. Nathan advised the Talukders that the plans had not been approved. He further warned them that under the Covenants Committee's Rules and Regulations, which had been approved by the Board of Directors in 2012, "[f]ountains shall be no larger than 78 inches in height and deemed an appropriate scale for the plotted location." Monirul Talukder responded, "I agree with all the notes." The Covenants Committee then approved the Talukders' backyard landscaping plan with the exception of the fountain, which exceeded the height restriction by three feet. Nathan

advised the Talukders that final approval of the fountain was required before installation. But the Talukders did not seek final approval before installing their fountain. Monirul later stated that he only expressed agreement with Nathan to get through the process and that he deemed the landscaping plan, including the fountain, automatically approved when the Board of Directors and Covenants Committee failed to act the year before.

Steeplechase filed suit seeking removal of the fountain and the Talukders filed a countercomplaint seeking a declaration that the fountain was permitted under the HOA documents and that the Covenants Committee "approved" the landscape plans in 2015 when it failed to act. The circuit court denied the parties' competing motions for summary disposition, finding factual questions that still needed to be resolved. Following a bench trial, the circuit court found the Talukders in violation of the Covenants and Restrictions. The court rejected their interpretation of the contract as providing for automatic approval when the Covenants Committee fails to act in a timely fashion. Ultimately, the Board of Directors made approval contingent on bringing the fountain into conformance with HOA guidelines and the Talukders did not meet that requirement.

The Talukders appeal.

II

Following a bench trial, we review the court's factual findings for clear error and legal conclusions de novo. *Alan Custom Homes, LLC v Krol*, 256 Mich Ap 505, 512; 667 NW2d 379 (2003). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. The HOA documents in this case are contracts between the parties that run with the land. *Huntington Woods v Detroit*, 279 Mich App 603, 628; 761 NW2d 127 (2008). We review de novo underlying issues of contract interpretation. *Holmes v Holmes*, 281 Mich App 575, 587; 760 NW2d 300 (2008).

The key issue in this case is whether the Covenants Committee's failure to act upon the Talukders' application in 2015 amounted to an automatic approval. It appears that the Talukders' application fell through the cracks because of a change in guard at Kramer-Triad. The Talukders subsequently failed to follow through to ensure their application had reached the Covenants Committee. Negligence may have occurred, but the lack of response was not an approval under the HOA documents.

Resolution of this issue depends on the proper interpretation of § 9.1(d) of the Covenants and Restrictions. The first sentence of that section provides:

> The Covenants Committee shall act on all matters properly before it within [45] days after its receipt of a complete application in the form prescribed by the Covenants Committee; failure to do so within the stipulated time shall constitute an automatic referral to the Board of Directors at the written request of the applicant.

The wording of this provision is awkward. After all, "automatic" is generally defined as "largely or wholly involuntary" and "having a self-acting or self-regulating mechanism." *Merriam-Webster Collegiate Dictionary* (11th ed). But the drafters included language requiring additional action. Read in context, the plain language of this sentence does not provide for automatic approval of an application if the Covenants Committee fails to act within 45 days. Rather, failure

-3-

to act results in "automatic referral" of the matter "to the Board of Directors at the written request of the applicant." This is a built-in appeal feature. In the event the Covenants Committee does not vote within 45 days, the applicant may request in writing that the Board of Directors consider the matter. If the applicant makes a written request, the matter is automatically referred to the Board of Directors, like an appeal as of right.

This interpretation is consistent with § 12.1(h)(3) of the Covenants and Restrictions:

> Upon receipt of a written request therefor made within [10] days after the date of an action by the Covenants Committee, the Board of Directors may afford any Person deemed by the Board to have standing as an aggrieved party the right to appeal to the Board, and the Board may reconsider, review, modify or reverse any action taken by the Covenants committee . . .

This provision required the Talukders to make their written request for review within 10 days of the Covenants Committee's decision, or lack of decision. This written request was due 55 days after filing their application. The Talukders never submitted a written request to have their application considered by the Board of Directors. The 2015 application process simply ended and the Talukders' backyard landscaping plan and fountain were not approved.

The Talukders repeatedly stated that approval was not required for their backyard landscaping plans, insisting that the approval process was limited to changes to the front yard, although they abandoned that claim by trial. In any event, we note that this belief is contrary to the HOA documents. Section 9.4(a)(1) of the Covenants and Restrictions provides that "prior written consent" is required for "any addition, alteration, improvement or change of grade in or to any Lot . . . which is Visible from Neighboring Property." The landscaping in general, and certainly a 9½-foot fountain, would be visible from neighboring lots and required approval.

Ultimately, in 2016, the Covenants Committee expressly denied that part of the Talukders' application seeking permission to install a backyard fountain. The Talukders could not claim confusion over the very clear statement made by the Committee. The Talukders did not make a written request for review by the Board of Directors. Instead, Monirul Talukder expressed agreement with the Committee's "notes," and installed the fountain without approval. Section 12.1(d) of the Covenants and Restrictions permitted the Board of Directors to order the removal of the fountain and to file suit seeking compliance.

The Talukders further complain that the Covenants Committee could not reject its application to install a fountain because the fountain limitations were included in "guidelines," not the rules and regulations, and because Steeplechase failed to circulate copies of the amended 2012 guidelines to all residents. The Talukders' challenge misses the mark. During the application process, the Talukders learned of the guidelines, which were duly adopted under the Covenants and Restrictions and the Steeplechase Bylaws. Written approval of the Talukders' landscaping plans and fountain was required and Steeplechase is not liable for the Talukders' expenditures made before securing approval.

On this record, the circuit court neither erred in finding factual questions warranting a trial nor in later resolving those factual disputes in Steeplechase's favor.

We affirm.

/s/ Anica Letica
/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien